CITY OF STOW; Teitsworth, Appellee,

v.

COVILLE, Appellant, et al.*

[Cite as *Stow v. Coville* (1994), 96 Ohio App.3d 70.]

Court of Appeals of Ohio,
Summit County.

No. 16271.

Decided June 22, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1412, 641 N.E.2d 1110.

*Edward L. Gilbert,* for appellee.

*Gerald B. Graham,* for appellants.

BAIRD, Judge.

This cause comes before the court upon the appeal of Bonnie Coville from the judgment of the Summit County Court of Common Pleas, finding her liable to appellee, Gordon Teitsworth, for defamation and awarding Teitsworth compensatory and punitive damages. We reverse.

In 1990, the city of Stow's tax collection procedures came under public attack. Local newspapers published numerous stories reporting on problems Stow taxpayers had experienced when the city challenged their tax returns. In addition, the controversy was featured on local talk radio and was the impetus for a citizens' petition demanding structural reform within the tax department and the dismissal of Teitsworth, the tax administrator.

In the course of the controversy, Coville made statements to others criticizing the manner in which the tax department had handled her tax dispute and questioning Teitsworth's ability to perform the duties of Stow's Tax Administrator. Among other statements, she told a newspaper reporter, "When I got that letter [assessing additional tax and a penalty for fraud], I said, 'This is extortion.'" In addition, Coville signed and circulated the citizens' petition. She also

spoke to several members of city council and to the mayor concerning her situation and her criticism of the tax department in general. In the course of these conversations, she related the facts of her tax problem and her feelings about the way she had been treated. She also questioned whether Teitsworth had personal problems that were affecting his ability to do his job.

In order to investigate the complaints, Stow filed a declaratory action seeking to obtain tax records, as required by city ordinance. Including Coville, that complaint named seven defendants, all of whom had been quoted in the first Beacon Journal article. It also named Teitsworth as a defendant. Coville cross-claimed against Teitsworth on issues that are not the subject of this appeal. Teitsworth cross-claimed against Coville for defamation and malicious prosecution. The declaratory action was dismissed, and a trial was had on the cross-claims.

The jury awarded Teitsworth $75,000 in compensatory damages on the defamation claim and found against him on the malicious prosecution claim. Subsequently, upon the jury's finding that punitive damages were due, the court awarded Teitsworth an additional $32,000. Coville now appeals, asserting four assignments of error. The assignments of error have been reorganized for ease of discussion.

## Assignment of Error III

"The court erred in failing to enter a judgment in favor of appellant, Bonnie Coville, notwithstanding the verdict in accordance with Civil Rule 50(B) on the grounds that the claimed defamatory material was constitutionally protected governmental criticism, was inherently ambiguous and lacking defamatory meaning, was a protected type of metaphorical expression, on the further grounds that appellee failed to meet his burden of proof that the statements were false and were made with actual malice, on the grounds that the court charged under a mere negligence standard not applicable to public officials and on the grounds that appellee failed to offer sufficient proof that damages were proximately caused by appellant's defamatory statement."

With this assignment of error, Coville asserts that Teitsworth failed to prove various elements of a defamation claim. Because the statements at issue are accorded conditional protection under the First Amendment, this court agrees that Teitsworth failed to prove that the statements had defamatory meaning and that Coville acted with the required degree of fault.

In an action for defamation, under Ohio law, the plaintiff must prove that the defendant made a false statement of fact about the plaintiff that tended to harm the plaintiff's reputation. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 365, 588 N.E.2d 280, 283. The statement must have been published,

or communicated, to a third person and have caused actual harm to the plaintiff personally or in his trade or business. *Id.* The plaintiff must prove the defendant's fault, and, when the plaintiff is a public official or other public figure, the degree of fault required is actual malice. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 724–725, 11 L.Ed.2d 686, 706. Some kinds of statements are absolutely or conditionally privileged, so that, even though they meet all the foregoing elements, they are not actionable or they are only actionable under certain conditions.

This case hinges on the protected content of the statements. Because Teitsworth is a public official, the First Amendment requires a heightened standard of review. Under that standard, Teitsworth failed to prove essential elements of his cause of action, particularly that the statements tended to harm his reputation and that Coville published them with actual malice.

### The First Amendment

In this country, defamation of the government is not actionable. It is axiomatic that the First Amendment to the Constitution of the United States protects the free expression of political ideas. To be protected, these ideas need not be presented in the form of rational and dispassionate analysis. On the contrary, " 'it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.' " *New York Times Co. v. Sullivan*, 376 U.S. at 269, 84 S.Ct. at 720, 11 L.Ed.2d at 700, quoting *Bridges v. California* (1941), 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192, 207. "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system." *Id.* Indeed, public discussion of public issues is a civic duty; the very survival of our system of government depends upon its free exercise.

As in *New York Times*, this case must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. at 270, 84 S.Ct. at 721, 11 L.Ed.2d at 701. When evaluating statements that are allegedly defamatory of a public official, it is good to remember this observation:

"In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are,

prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy." *Cantwell v. Connecticut* (1940), 310 U.S. 296, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213, 1221, quoted in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 271, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 701.

Because Teitsworth is a public figure and Coville's statements criticized his performance of public duties, this case raises obvious First Amendment issues. In such a case, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" (Citations omitted.) *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502, 515.

■ This court begins its examination by excluding any of Coville's statements that were critical of the Stow Tax Department but did not refer to Teitsworth personally. To allow an action for defamation based on such comments would be to censure political speech merely because it is specific. When Congress attempted to punish such speech, with the Sedition Act of 1798, it was immediately and vigorously condemned. While the Act died a natural death, the response it provoked from every branch of government reflected a broad consensus that it was unenforceable because "the restraint it imposed upon criticism of government and public officials was inconsistent with the First Amendment." *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 276, 84 S.Ct. 710, 724, 11 L.Ed.2d 686, 704.

To determine whether the judgment on the remaining statements constitutes an infringement on free expression, this court will consider two elements of a defamation claim: that the statement tends to harm the plaintiff's reputation and that the defendant acted with actual malice.

### Elements of Defamation

■ It is a question of law whether a statement is capable of carrying a defamatory meaning. *Vogel v. Sekulich* (Sept. 15, 1993), Summit App. No. 16105, unreported, at 8, 1993 WL 347096, citing *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423, 453 N.E.2d 666, 669. *Greenbelt Cooperative Publishing Assn., Inc. v. Bresler* (1970), 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6, offers an example of a vitriolic criticism of a public figure which the court held was not defamatory as a matter of law. In that case, a newspaper article reported criticism voiced at a hearing of a local zoning proposal. At that hearing, several persons characterized the plaintiff's negotiating strategy as "blackmail."

The Supreme Court held that in that case the accusation of "blackmail" was not a defamatory statement, and, therefore, was not actionable, because "the word was no more than rhetorical hyperbole." *Id.* at 14, 90 S.Ct. at 1542, 26 L.Ed.2d at 15. The court reversed the judgment for the plaintiff on that basis, declaring that even if the plaintiff had proved actual malice, he could not constitutionally recover because, under the heightened protection accorded political speech, these words were not defamatory. *Id.* at 13, 90 S.Ct. at 1541, 26 L.Ed.2d at 14. That heightened standard is mandatory under the First Amendment. "Because the threat or actual imposition of pecuniary liability for alleged defamation may impair the unfettered exercise of these First Amendment freedoms, the Constitution imposes stringent limitations upon the permissible scope of such liability." *Id.* at 12, 90 S.Ct. at 1541, 26 L.Ed.2d at 14.

■ The case before this court is much like *Greenbelt.* Coville's statements to others regarding Teitsworth were nothing more than the complaints of a disgruntled taxpayer. The "extortion" comment was obviously made at the height of pique, though it was related to the reporter later, and is the kind of hyperbole discussed in *Greenbelt.* On balance, what the record reveals is Coville's genuine misunderstanding of the tax system. It also reveals her feelings of resentment toward governmental officials who, from her point of view, acted against her best interests. The degree to which Coville and Teitsworth both identified "The City," "The Tax Department," and Teitsworth himself as the same entity indicates the dangers of finding defamatory content in statements critical of a public official, especially where the criticism is directed at the official's public duties. This court finds no defamatory content here.

Even if Teitsworth had proved that Coville had made defamatory statements, his claim must still fail because he failed to prove the required degree of fault. In *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the Supreme Court established the degree of fault that a public official plaintiff must prove in defamation cases. It held that the plaintiff must prove the defendant's actual malice, which is knowledge of falsity or reckless disregard of probable falsity. *Id.* at 279–280, 84 S.Ct. at 725–726, 84 L.Ed.2d at 706. The defendant's feelings of animosity toward the plaintiff are not to be confused with actual malice. *Greenbelt Cooperative Publishing Assn., Inc. v. Bresler* (1970), 398 U.S. 6, 10, 90 S.Ct. 1537, 1539, 26 L.Ed.2d 6, 12–13; *Masson v. New Yorker Magazine* (1991), 501 U.S. 496, 509, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447, 468. The plaintiff must prove by clear and convincing evidence that the defendant subjectively knew that her statement was false or that she entertained serious doubts as to its truth. *New York Times Co. v. Sullivan,* 376 U.S. at 285–286, 84

S.Ct. at 728–729, 84 L.Ed.2d at 710; *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267.

"The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 685, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562, 587. That issue "rests entirely on an evaluation of [the speaker's] state of mind when he [made the statement]." *Bose Corp. v. Consumers Union of the U.S., Inc.* (1984), 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502. A review of the record in this case fails to reveal sufficient proof of actual malice.

While there was some evidence that Coville made false statements about Teitsworth or the tax department, there was little evidence that she knew them to be false, or even thought they might be false, at the time she said them. The statement which seemed to most concern Teitsworth, the "extortion" comment, truthfully expressed Coville's feelings at the time she opened the letter. Though she told a reporter about her feelings some months later, she did not indicate that she continued to have the same intensity of emotion. There was ample evidence that Coville subjectively believed the truth of the other statements she made. Teitsworth failed to prove actual malice with convincing clarity.

This case does not present a grey area of constitutional interpretation. It concerns the freedom of an individual to comment upon the quality of her government. Teitsworth is a public official and the statements about which he complains were made with reference to his performance of public duties. A review of the entire record reveals that all the statements made by Coville arose out of her vehement disagreement with the resolution of her dispute with the Stow Tax Department. This kind of speech, unless it is shown to have been uttered with the actual malice required by *New York Times* is and must be protected. The third assignment of error is well taken.

### Assignment of Error IV

"The court erred in assessing additional punitive damages in the amount of $32,000.00 against Appellant."

Because this court holds that Teitsworth failed to prove actionable defamation, neither compensatory nor punitive damages are available.

Because the function of punitive damages is to discourage further acts of similar character, perhaps they are least appropriate to cases of damage to a public official's reputation. Punitive damages in those cases would serve to chill

the free exercise of public criticism, the kind of open criticism of government that is the foundation of a free society. As Justice Brandeis wrote, "freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth." *Whitney v. California* (1927), 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095, 1105 (Brandeis, J., concurring). The fourth assignment of error is well taken.

### Assignment of Error I

"The court erred when it failed to dismiss count one of appellee's corrected amended cross-claim on the grounds that it failed to state a claim upon which relief could be granted and failed to meet due process of law standards of adequate notice of proceedings."

### Assignment of Error II

"The court erred in failing to direct a verdict in accordance with Civil Rule 50 in favor of appellant, Bonnie Coville, at the close of appellee's evidence on the grounds of lack of requisite proof of actual malice, proof of falsity and proof of proximate cause."

Both these assignments of error are rendered moot by the disposition of Assignment of Error III. Pursuant to App.R. 12(A)(1)(c), no discussion is necessary.

The judgment of the trial court is reversed, and judgment is entered in favor of the appellant, Bonnie Coville, on the defamation claim only.

*Judgment reversed.*

REECE, P.J., and COOK, J., concur.