**WORLDNET SOFTWARE COMPANY et al., Appellants,**

**v.**

**GANNETT SATELLITE INFORMATION NETWORK, INC.,**
**d.b.a. The Cincinnati Enquirer, et al., Appellees.**

[Cite as *Worldnet Software Co. v. Gannett Satellite Info.*
*Network, Inc.* (1997), 122 Ohio App.3d 499.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960869.

Decided Sept. 5, 1997.

500

502

*Kimpel, Hyland, Weinkam & Goodson* and *William M. Gustavson*, for appellants.

*Graydon, Head & Ritchey* and *John C. Greiner*, for appellees Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer, and Charles Brewer.

*Keating, Muething & Klekamp, P.L.L., Michael L. Scheier,* and *James E. Burke,* for appellees Citicasters, Inc., Howard Ain, and WKRC–TV.

*Frost & Jacobs* and *Richard Goehler*, for appellees Better Business Bureau of Cincinnati, Ohio, and Better Business Bureau of South Florida, Inc.

SUNDERMANN, Judge.

Appellant Mark Hanson appeals the dismissal of his defamation claim against appellees. Appellant Worldnet Software Company ("Worldnet") appeals the dismissal of similar claims against appellees Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer, and Charles Brewer (collectively, "the Gannett appellees"), and Citicasters, Inc., Howard Ain, and WKRC–TV (collectively, "the Citicasters appellees"). Because we conclude that appellant Worldnet's assignment of error with respect to the Citicasters appellees is well taken, we reverse the judgment of the trial court with respect to Citicasters. We affirm the trial court with respect to the other claims.

Appellants filed a complaint in April 1996, seeking damages for defamation and libel against appellees. The complaint was based on a newspaper article in the Enquirer and a television report that appeared on WKRC–TV. The Better Business Bureau was made a defendant based on statements attributed to it in the television report. Appellees filed motions to dismiss. The trial court dismissed Hanson's claim against all the appellees. Further, Worldnet's claims against the Gannett appellees and the Citicasters appellees were dismissed pursuant to Civ.R. 12(B)(6).[1]

For this court to affirm the trial court's dismissal of the appellants' claims, "it must appear beyond doubt from the complaint that [appellants] can prove no set of facts entitling [them] to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. Whether certain statements alleged to be defamatory are actionable is

---

1. We note that the Better Business Bureau has not appealed the trial court's denial of its motion to dismiss the claims of Worldnet.

a question of law for the court. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423–424, 453 N.E.2d 666, 669. Further, whether the allegedly defamatory statements involve opinions or facts is also a question of law. *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 250, 25 OBR 302, 307–308, 496 N.E.2d 699, 705; *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182. Thus, the resolution of these issues is amenable to a Civ.R. 12(B)(6) motion. See *id.*

Our research of defamation actions has revealed factors which, as matters of law, are properly decided at this point in the case. First, for a statement to be actionable by a plaintiff, it must be shown that the allegedly defamatory statement was "of and concerning" the plaintiff. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 267, 84 S.Ct. 710, 719, 11 L.Ed.2d 686, 698–699. See, also, *Stow v. Coville* (1994), 96 Ohio App.3d 70, 644 N.E.2d 673; *Lambert v. Garlo* (1985), 19 Ohio App.3d 295, 19 OBR 467, 484 N.E.2d 260. Second, the statement must be one of fact, rather than an opinion.

"When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182, syllabus.

Finally, if the plaintiff is a public figure, actual malice must be shown. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.

In the first assignment of error, appellant Mark Hanson asserts that the trial court erred in granting appellees' motions to dismiss Hanson's claim. The trial court granted the Civ.R. 12(B)(6) motions, concluding that the allegedly defamatory statements were not "of and concerning" Hanson. In neither the newspaper article nor the television broadcast was Hanson's name mentioned. However, Hanson argues that because there is no legal distinction between him and Worldnet, any allegedly defamatory statement made about Worldnet is also made about him as the operator of Worldnet. Hanson cites *Poss v. Morris* (Mar. 29, 1996), Ashtabula App. No. 94–A–0042, unreported, 1996 WL 200614, in which the Eleventh Appellate District recognized that a party conducting business under a "doing business as" ("d.b.a.") designation remains personally liable for the injuries caused by the company. *Id.* Hanson contends that this principle should apply in the converse, allowing him to recover for defamation of his business. We disagree. Hanson was not personally injured by statements made

about Worldnet. None of the statements was "of and concerning" Hanson individually. Further, we note that any damages awarded to Worldnet would go to Hanson individually. The trial court correctly dismissed Hanson's claim against all of the appellees. Accordingly, the first assignment of error is overruled.

The second assignment of error is that the trial court erred in dismissing Worldnet's claims against the Gannett appellees and the Citicasters appellees. We will consider the claims against each group of appellees separately.

■ With respect to the Gannett appellees, appellant lists six allegedly defamatory statements made about appellant in an article by Brewer.[2] First, because Worldnet is specifically mentioned by name, there is no question but that the portion of the column to which appellant refers is "of and concerning" appellant.

■ As to the second factor, the trial court concluded that the statements constituted protected opinion. We agree. With respect to the specific language used, the words "scam" and "scheme" are used repeatedly in the column. This court must determine "whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype or opinion; whether the language has a readily ascertainable meaning or is ambiguous." *Vail, supra,* 72 Ohio St.3d at 282, 649 N.E.2d at 186. While the words "scam" and "scheme" may be innocuous and hyperbole, at this point in the proceedings, we must "make all reasonable inferences in favor of the nonmoving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. For purposes of a Civ.R. 12(B)(6) motion, we cannot conclude that the words were mere hyperbole.

Next, we will consider whether the statements made about Worldnet are verifiable. "Does the author imply that he has firsthand knowledge that substantiates the opinions he asserts?" *Vail, supra,* 72 Ohio St.3d at 283, 649 N.E.2d at 186. In the portion of the column dealing with Worldnet, Brewer wrote that Worldnet was *"probably* a scam." (Emphasis added.) Further, Brewer suggested that readers should contact the National Fraud Information Center. Such

---

**2.** The alleged defamatory statements were as follows:
   a. That the plaintiffs were involved in an "on-line scheme";
   b. That the plaintiffs were involved in an "on-line scam";
   c. That the plaintiffs were involved in a "work-at-home scheme that appears to be snaring people throughout the country, including Cincinnati";
   d. That the plaintiffs "bill [themselves] as the next great on-line service, but [they're] just a small computer bulletin board in the Miami area";
   e. That "[a]nyone considering these work-at-home schemes should contact the National Fraud Information Center"; and
   f. That the plaintiffs were "probably a scam." (Appellants' complaint, t.d. 1.)

references and suggestions indicate that the statements of the writer were not implying "first-hand knowledge." Rather, he stated that he had received comments about Worldnet from readers, and that readers should contact the National Fraud Information Center for information.

Finally, the court must consider the general context of the statements and the broader context in which the statements appeared. As far as the general context of the statements, the statements made are subjective, opinionated statements about Worldnet. Further, upon examination of the column, it is apparent that the entire text, written under Brewer's by-line, is full of his opinions. Much of the column is written in the first person, suggesting editorializing rather than reporting. For instance, Brewer comments on his predecessor's ability to write about "surfing the Net." Also, nearly one-third of the article is about America Online as "probably a better route for computer novices to explore the Internet." Further, Brewer gives his e-mail address for readers' questions, comments, and suggestions. Thus, based on the totality of the circumstances, we conclude that the statements were couched in an article that was full of the writer's opinions. Accordingly, because the statements in the article were protected opinion, we conclude that the trial court correctly granted the Gannett appellees' motions to dismiss.

With respect to the claims against the Citicasters appellees, appellants listed seven allegedly defamatory statements made in a television broadcast by Howard Ain.[3] As to the first requirement, we conclude that four of the statements (a through c, and g in the complaint) are not "of and concerning" appellant. Rather, the statements are general cautions to viewers about doing business on the Internet. However, the remaining three comments (d through f) specifically refer to Worldnet and, therefore, meet the first requirement for actionability.

The next consideration is whether the remaining statements are opinions or facts. The specific language in statements d through f does not appear to be hyperbole. Further, with all inferences made in favor of Worldnet, the statements appear to be actionable. As to the second consideration in *Vail,* the three

---

**3.** The statements, according to appellants' complaint, are as follows:

    a.   That, concerning the plaintiffs' business, there was an "Internet Warning";

    b.   That, concerning the plaintiffs' business, "but a word to the wise, not all of them are legitimate";

    c.   That, concerning the plaintiffs' business, "when you get on-line, be careful";

    d.   That the plaintiffs' business "appears to be a pyramid scam";

    e.   That the Plaintiffs' business "does not respond to complaints";

    f.   That the Plaintiffs' business "does not take care of its customers"; and

    g.   That, concerning the plaintiffs' business, "[r]emember, just because a company is on the Internet does not make it legitimate." (Appellants' complaint, t.d. 1.)

statements are stated as firsthand knowledge and are verifiable. Finally, in consideration of the general context of the statements and the broader context in which they appear, the statements seem factual rather than opinion. The report appeared during a news broadcast as a "troubleshooter" report, and there is no indication that the statements were made in the midst of a commentary or editorial. Accordingly, having applied the *Vail* test, we conclude that Worldnet has stated a sufficient claim for relief with respect to the actionability of some of the statements made in the report.

Having made the above determination, we turn to the issue of whether Worldnet is a public or private figure. The trial court determined that because Worldnet was a public figure, actual malice had to be pleaded. The trial court then determined that Worldnet had not pleaded facts which demonstrated actual malice. While we agree that, under *New York Times, supra,* and *Gertz, supra,* a public figure must demonstrate actual malice in order to be successful in a defamation action, we conclude that the trial court erred in concluding that Worldnet was a public figure.

Our research has found no Ohio cases which deal squarely with the public-versus-private-figure issue. To support their position, appellees point to language in *Greer v. Columbus Monthly Publishing Corp.* (1982), 4 Ohio App.3d 235, 4 OBR 426, 448 N.E.2d 157. That case involved a scathing restaurant review. The Tenth Appellate District's discussion focused mainly on the question of whether the review was fact or opinion. However, the court went on to state that the restaurant had to prove actual malice because the restaurant was a public figure in the context of a restaurant review. *Id.* at 239, 4 OBR at 430–431, 448 N.E.2d at 162. Appellees contend that this principle should be extended to all businesses. Thus, under the test offered by appellees, any business, regardless of size or advertising, would be considered a public figure for purposes of articles or reports about the business. However, this test is overly broad; a better case-by-case approach is offered by several federal courts that have considered the issue. See, generally, *Gertz, supra; Snead v. Redland Aggregates Ltd.* (C.A.5, 1993), 998 F.2d 1325; *Blue Ridge Bank v. Veribanc* (C.A.4, 1989), 866 F.2d 681; *Bichler v. Union Bank & Trust Co.* (C.A.6, 1983), 715 F.2d 1059.

The following principles can be gleaned from federal decisions that address the issue. First, two considerations inform the question of whether a plaintiff is a public or private figure: "the plaintiff's access to the media, and the extent to which the plaintiff, by virtue of his position in the community or involvement in a particular matter of public concern, can be said to invite public comment and attention." *Blue Ridge, supra,* at 686, citing *Gertz, supra,* 418 U.S. at 344–345, 94 S.Ct. at 3009, 41 L.Ed.2d at 807–808. A plaintiff can be considered a "general purpose public figure" or "limited-purpose public figure." *Blue Ridge,*

*supra*, at 687. "A general purpose public figure is one who occupies a position 'of such persuasive power and influence' and 'pervasive fame or notoriety' in the community that he assumes 'special prominence in the resolution of public questions' and 'in the affairs of society.'" *Id.* With respect to a limited-purpose public figure, a court must consider the party's own conduct, specifically "the presence of extensive advertising (creating a high public profile and demonstrating media access) and a direct relationship between the promotional message and the subsequent defamation (indicating plaintiff's pre-existing involvement in the particular matter of public concern and controversy)." *Id.* Another court has suggested at least three factors to consider: the notoriety of the company to the average individual in the relevant area; the nature of the business; and the frequency and intensity of media scrutiny of the company. *Snead, supra,* 998 F.2d at 1329. It is important to note that a plaintiff does not become a public figure merely because the allegedly defamatory statements create a controversy; the controversy must have existed prior to the statements. *Blue Ridge, supra,* 866 F.2d at 688.

The United States Fifth Circuit Court of Appeals has stated that "[b]ecause the two *Gertz* justifications for the public figure/private figure dichotomy do not suggest a general rule to be applied to corporations, the inquiry must be made on a case-by-case basis, examining all the relevant facts and circumstances." *Snead, supra,* 998 F.2d at 1329. With this in mind, we have applied the above factors to the case at bar, and we have concluded that Worldnet is not a public figure. First, Worldnet does not have the presence of a general purpose public figure. Instead, the question turns on whether Worldnet is a limited-purpose public figure. Despite the fact that Worldnet advertises on the Internet, the record, as developed thus far, does not demonstrate extensive advertising. Although a link exists between Worldnet's promotional message and the television report, there is no indication of Worldnet's prior involvement in a matter of public concern. Rather, it appears as though much of Worldnet's notoriety has been created by the report in question. Finally, other than the newspaper article and the television report that are the subject of the case at bar, we have at this point in the proceedings no evidence of media scrutiny of Worldnet. At this stage in the proceedings, because we have determined that Worldnet is not a public figure, actual malice did not have to be pleaded. Accordingly, the trial court erred in dismissing the claims against the Citicasters appellees on this basis. The second assignment of error is well taken with respect to Worldnet's claims against the Citicasters appellees.

In conclusion, the first assignment of error is overruled with respect to all appellees. The second assignment of error is well taken with respect only to the Citicasters appellees. The judgment of the trial court is affirmed in part and

reversed in part, and the case is remanded to the trial court for further proceedings in accordance with law.

*Judgment accordingly.*

DOAN, P.J., concurs.

MARIANNA BROWN BETTMAN, J., concurs in part and dissents in part.

MARIANA BROWN BETTMAN, Judge, concurring in part and dissenting in part.

I concur in all of Judge Sundermann's opinion except the determination that Worldnet is a private figure and thus does not need to plead or prove actual malice in this defamation action. Judge Sundermann attempts to apply the private-figure test of *Gertz* to reach this conclusion. The United States Supreme Court has never determined that the public-figure/private-figure distinction set forth in *Gertz* applies to businesses, corporate or otherwise. While I believe that businesses undeniably have reputations they rightly wish to protect, I do not find the test in *Gertz* to be a comfortable one to apply to a business plaintiff in a defamation action, particularly in a case involving a media defendant.[4]

Judge Sundermann's opinion and the cases cited in reference to whether a business is "public" or "private" demonstrate that it is virtually impossible to craft a basis on which our trial courts can rely in applying a public/private test to businesses.[5] Further, a case-by-case analysis is not sufficiently useful to our trial courts.

The Supreme Court of Ohio has spoken forcefully about the value of uninhibited debate and a free press. For example, in *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 512 N.E.2d 979, Justice Locher, the author of the majority opinion, wrote:

"This court has recently reinforced the view that the First Amendment grants a unique protection to the press from the 'chilling effect' of defamation litigation with its decisions in *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302,

---

**4.** Among the difficulties with deciding defamation cases involving media defendants is the existence of many different ways to analyze the problem. See, *e.g.*, *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (plurality); *Jadwin v. Minneapolis Star & Tribune* (Minn.1985), 367 N.W.2d 476; *Martin Marietta Corp. v. Evening Star Newspaper Co.* (D.D.C.1976), 417 F.Supp. 947; *Lawrence v. Fox* (1959), 357 Mich. 134, 97 N.W.2d 719; Lee, Public Interest, Public Figures, and the Corporate Defamation Plaintiff: Jadwin v. Minneapolis Star & Tribune (1987), 81 Nw.U.L.Rev. 318.

**5.** In *Embers Supper Club, Inc. v. Scripps–Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 9 OBR 115, 457 N.E.2d 1164, modified in *Lansdowne, infra*, the Ohio Supreme Court determined, without any particular analysis, that the plaintiff supper club was a private figure. I do not take this case to mean that the court believes that all businesses are private figures.

496 N.E.2d 699, and *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 31 OBR 250, 509 N.E.2d 399."

Subsequently in *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182, as in *Scott, supra,* the court held that expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution as a valid exercise of freedom of the press. In this regard, opinion is given greater protection under the state than the federal Constitution. This is so, although this point often seems to be overlooked, regardless of the status of the speaker as public or private, individual or business. In other words, as noted by Justice Douglas in his separate concurrence in *Vail, supra,* "[o]nce the determination is made that specific speech is 'opinion' the inquiry is at an end. It is constitutionally protected." *Id.* at 284, 649 N.E.2d at 186–187. Indeed, it is on this precise basis that the case against the Gannett defendants was dismissed. The fact that Worldnet is a business was immaterial to this determination.

In *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713, the Ohio Supreme Court recognized a qualified privilege in defamation cases. This privilege was cited with approval in *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, wherein the court stated that "the concept of a qualified privilege is based upon public policy and the need to protect the publication of a communication made in good faith." *Id.* at 114, 573 N.E.2d at 612.

Consonant with all of these decisions and statements of public policy from our highest court, I believe that instead of trying to decide whether a business is a public or private figure, courts should extend the qualified privilege recognized in *Hahn* to a media defendant to report what is in the public interest. Whether a matter is qualifiedly privileged is a question of law for the court. This qualified privilege can be defeated by a showing of actual malice on the part of the defendant, *Hahn, supra,* paragraph two of the syllabus, or by demonstrating that the matters reported are not in the public interest. The burden of proving either is on the plaintiff.[6]

Consumer protection is clearly a matter of public interest, and, in this case, I would require Worldnet to prove actual malice before it can recover. Nevertheless, I agree with the lead opinion that this claim cannot be determined on the pleadings in this case, and I would remand the case for further development of the issue of malice.

---

**6.** I do not consider this qualified privilege recognized in *Hahn* to be the same thing as the neutral reportage doctrine discussed in *Young v. Morning Journal* (1996), 76 Ohio St.3d 627, 669 N.E.2d 1136.