OPINION
{¶ 1} Plaintiff-appellant, Norman V. Whiteside, appeals a decision of the Madison County Court of Common Pleas dismissing his defamation action against defendants-appellees, United Paramount Network, WWHO-TV, Fox Broadcasting and WTTE-TV.
 {¶ 2} Appellant filed a complaint alleging that from September 1, 2002, to September 21, 2002, appellees broadcast shows in which statements were made characterizing male prisoners as homosexuals. His complaint also included "J. Doe Companies, writers, producers, networks, performers, affiliates x 10000."
 {¶ 3} In his complaint, appellant alleged that the following broadcasts were defamatory: 1) In the movie "Camp Nowhere," one of the actors stated that if he did not get away, he would be "placed in prison with a 200-pound fiancé named Duke." 2) In the show "V.I.P.," one of the actors, portraying an officer, told another actor, portraying a criminal, that if he did not get certain information he would be "bunking with people named Bubba." 3) On the "Steve Harvey Show," Cedric the entertainer said, "I can't go to jail with these boyish good looks," and Steve Harvey responded, "You can be Opie here, or Shirley down in Cell Block D." 4) During the "Jamie Foxx" show, Jamie Foxx referred to another actor about to go to jail by stating, "Where he's going, he'll be wearing pumps tonight." 5) During an episode of "Mad T.V.," an actor portraying former Representative Traficant and describing being in prison stated, "But I don't enjoy being raped every day."
 {¶ 4} Appellant amended his complaint and added the following alleged instances of defamation: 1) In the show "Angel," one actor stated to another, "If you're thinking of stealing this thing, you're taking a chance of going to prison and being someone's bitch." 2) During the show, "She Spies," a female actress stated to a male actor that, "Once you go to prison you'll be able to get many dates." 3) In "That 70's Show," a female actress stated, "When you're in prison, your table manners may turn on some guys," in reference to how a male actor was eating a hot dog. 4) During an episode of "Will and Grace," an actress discussing her husband in jail stated, "The only person suffering is his bunkee on the bottom with a face full of mattress." 5) On the "Late, Late Show," a clip of a "Prison Museum" was shown causing viewers to believe that there are only two signs on prison restrooms — "Ladies and Bitches."
 {¶ 5} Appellant alleged that these broadcasts cause viewers to believe that every person who goes to prison, including himself, is involved in a homosexual relationship, when he is, in fact, "100% heterosexual." He alleged that the means by which appellees "carry out their nefarious will is via psychological conditioning methods designed to condition and/or encode into the minds of all viewers to believe that all persons going to prison" will be involved in a homosexual relationship.
 {¶ 6} Appellant alleged that appellees' actions have caused ridicule, humiliation, degradation, shame and diminishment in restored integrity and reputation, and emotional and mental stress. He requested a declaratory judgment that appellees' actions were defamatory and in retaliation to a letter he had written requesting such broadcasting to stop. He also requested in excess of $5 million in compensatory damages from each defendant, in excess of $5 million for special damages from each defendant, and punitive damages in excess of $10 million from each defendant. He further requested injunctive relief forbidding such broadcasting and a published announcement that there is no proof that all persons who go to prison are involved in a homosexual relationship.
 {¶ 7} Appellees moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court dismissed appellant's complaint on the grounds that appellant had failed to show that the alleged defamatory broadcasts were not "of and concerning" him.
 {¶ 8} Appellant now appeals the trial court's decision to dismiss his complaint and raises two assignments of error for our review.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The court below erred in its interpretation of libel per quod consistent with the law."
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "The court below erred in not addressing the matter of retaliation, fictionalization and by not providing adequate conclusions of law."
 {¶ 13} In order for a court to dismiss a complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. Cincinnati v. BerrettaU.S.A. Corp., 95 Ohio St.3d 416, 2002-Ohio-2480, at ¶ 5, quotingO'Brien v. Univ. Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, syllabus. The court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. Mitchell v. LawsonMilk Co. (1988), 40 Ohio St.3d 190, 192. We review the trial court's decision to dismiss a claim pursuant to Civ.R. 12(B)(6) de novo. Bell v. Horton (1995), 107 Ohio App.3d 824, 826.
 {¶ 14} Defamation is a false publication that injures a person's reputation. Dale v. Ohio Civ. Serv. Emp. Assn. (1991),57 Ohio St.3d 112, 117. Spoken defamation is known as slander, while written defamation is known as libel. Gosden v. Louis
(1996), 116 Ohio App.3d 195, 207, citing Restatement of the Law 2d, Torts (1977) 155, Section 558. Defamation per se occurs when the material is defamatory on its face; defamation per quod occurs when the material is defamatory through interpretation or innuendo. Becker v. Toulmin (1956), 165 Ohio St. 549, 556.
 {¶ 15} In order to be actionable, a plaintiff in a defamation action must show that the alleged defamatory statement was "of and concerning" the plaintiff. New York Times Co. v. Sullivan
(1964), 376 U.S. 254, 267, 84 S.Ct. 710, 719; Worldnet SoftwareCo. v. Gannett Satellite Information Network, Inc. (1997),122 Ohio App.3d 499, 504. The trial court dismissed appellant's complaint because he failed to establish this element.
 {¶ 16} The law is well-settled that defamation of a large group does not give rise to an action on the part of an individual member unless he can show special application of the defamatory matter to himself. Arcand v. Evening Call PublishingCo. (C.A. 1, 1977), 567 F.2d 1163. Accordingly, defamation actions have failed where the groups libeled were all officials of a state-wide union, Noral v. Hearst Publications, Inc.
(1940), 40 Cal.App.2d 348, all taxicab drivers in Washington D.C., Fowler v. Curtis Publishing Co. (D.C.D.C. 1948),78 F. Supp. 303, the members of a clan, Lousville Times v. Stivers
(Ky.App. 1934), 68 S.W.2d 411, a group of almost 400 saleswomen,Neiman-Marcus v. Lait (S.D.N.Y. 1952), 13 F.R.D. 311, and a group of subdivision property owners, Gintert v. HowardPublications, Inc. (D.C.Ind. 1983), 565 F. Supp. 829.
 {¶ 17} We agree with the trial court that appellant's defamation action falls within the group libel rule above. Appellant's complaint alleges that appellees' broadcasts defame him, and all prisoners, by causing the public to believe that all prisoners are involved in a homosexual relationship. He has not alleged that the broadcasts had any special application by pointing to him personally, or that the words referred solely to him.
 {¶ 18} In his first assignment of error, appellant claims that the trial court erred in its interpretation of libel per quod. As mentioned above, defamation per quod occurs when the material is defamatory through interpretation or innuendo. Appellant contends that because he and another person, whose affidavit is in the record, interpreted appellees' statements as defamatory, the issue should have been one for a jury, not the trial court, to determine.
 {¶ 19} However, appellant's argument is misplaced. The trial court did not dismiss appellant's complaint on the basis that the statements were not defamatory. Instead, the complaint was dismissed on the rule that where a group defamed is large, there is no cause of action. Thus, even assuming that appellees' comments were defamatory, appellant's complaint still fails to state a claim upon which relief can be granted because it fails to meet the "of and concerning" element of defamation. Appellant's first assignment of error is overruled.
 {¶ 20} In his second assignment of error, appellant contends that the court did not address the issues of retaliation and fictionalization and did not provide adequate conclusions of law. However, as mentioned above, because appellant's complaint fails on the "of and concerning" element, even if these issues were resolved in appellant's favor, his complaint still fails to state a claim upon which relief can be granted. Thus, even if we were to assume fictionalized comments can be defamatory and that the comments in this case were made in retaliation for appellant's letter, appellant's cause of action still fails because of the group libel rule. Appellant's second assignment of error is overruled.
 {¶ 21} Judgment affirmed.
Walsh and Valen, JJ., concur.