[Cite as *Hamilton v. Gannett Co., Inc.*, 2020-Ohio-6771.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JAMES HAMILTON, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| GANNETT CO., INC., et al., | : | Case No. CT2020-0028 |
| | : | |
| Defendant - Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
                            Court of Common Pleas, Case No.
                            2019 - 0310



JUDGMENT:                   Affirmed



DATE OF JUDGMENT:           December 17, 2020



APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellees

BRIAN L. ZIMMERMAN                      JOHN C. GREINER
B. Zimmerman Law                        KELLIE ANN KULKA
229 Third Street NW, Suite 200          Graydon Head & Ritchey LLP
Canton, Ohio 44702                      312 Walnut Street, Suite 1800
                                        Cincinnati, Ohio 45202

*Baldwin, J.*

**{¶1}**   Appellant, James Hamilton, appeals the decision of the Muskingum County Court of Common Pleas dismissing his complaint for defamation under the authority granted the court by Civ. R. 12(b)(6).  Appellees are Gannett Co., Inc. and Shelley Schultz.

## STATEMENT OF FACTS AND THE CASE

**{¶2}**   Hamilton claims he was defamed by appellees statements in two newspaper articles written by appellee Shelley Schultz and appearing in the Zanesville Times Recorder, a Gannett operated newspaper.  Hamilton's complaint alleged that a statement from one article, when read in conjunction with a statement from the second article, was equivalent to a statement that he was responsible for injuries to his young daughter.  The trial court dismissed the complaint, finding that the innocent construction rule applied, defeating his claims and warranting dismissal of the complaint.

**{¶3}**   Hamilton was the father of a two year old girl, Lillion Rose Hamilton, and the paramour of Karley M. Schaefer.  Hamilton had custody of Lillian, though the circumstances leading to his custody of the child and his living arrangements with Schaefer are not disclosed in the complaint or in any pleadings. Hamilton alleges that Lillion died as a result of blunt force trauma to her head, solely caused by Schaefer who was later charged, convicted and imprisoned. The complaint provides no detail regarding the events leading to the injury other than the person responsible, Schaefer, and the fact that it was ultimately fatal. The complaint makes reference to Lillion being placed in Hamilton's custody, and the allegations of the complaint rely on that fact, so we accept that the child was in Hamilton's custody when she was injured for purposes of this appeal.

**{¶4}** Hamilton alleges that appellees wrote articles regarding Lillion's death and that one article contained the following statement: "Lillion had been placed in the custody of her father months earlier. Maternal family members continuously complained that Lillion was not being properly care for in the custody of her father and Schaefer." (Complaint, paragraph 10). Hamilton did not describe the date of the article and the balance of the article is not described within the allegations or attached to the complaint. Hamilton agreed that this statement is true to the extent it states Lillion was in his custody and that the maternal family members were complaining.

**{¶5}** Hamilton alleges that, on June 14, 2019, the appellees published an article referencing the sentence imposed on Schaefer for the death of Lillion and comparing it to an unrelated case, where a defendant received a much longer sentence for the death of a three year old child. Hamilton selects the following statement from the article, claiming it is false and defamatory when read in conjunction with the statement from the previous article: "Despite the broad differences in sentences, the crimes were similar in nature. Two children, each of whom showed signs of pre-existing injuries, died as a result of injuries that went untreated." (Complaint, ¶ 11)

**{¶6}** The balance of the article is not described in the complaint, nor is it attached. Hamilton then alleges:

**{¶7}** "By making the aforementioned false and defamatory statement, Defendant Schultz, on behalf of the Zanesville Times Recorder and its owners/operators directly indicated that Plaintiff James Hamilton had previously physically abused his child, Lillion Rose Hamilton, because it followed Defendant Schultz' reporting that maternal family

members were continuously complaining that Lillion was not being properly cared for by her father." (Complaint, ¶ 12)

**{¶8}** Hamilton also alleged that appellee Schultz made two additional false and defamatory statements when she was confronted by a family member who insisted there were no signs of pre-existing injuries. Schultz allegedly claimed that the autopsy report confirmed Lillion had suffered prior physical abuse resulting in untreated injuries and that the deputy coroner had confirmed that Lillion had suffered physical abuse resulting in untreated injuries. The complaint does not contain a quote of the comments allegedly made by either Schultz or the family member, but only paraphrases them. Hamilton mentions "written communications" to his "cousin, McKenzie Prim," but the record contains no document matching that description. (Complaint, ¶ 22)

**{¶9}** Appellees moved to dismiss the complaint for failure to state a claim under Civ. R. 12(B)(6). Appellees contend that the statements highlighted by Hamilton do not refer to him, but are directed at Schaefer and only suggest that Lillion suffered injuries and not that he injured Lillion. Appellee also notes that the June 14, 2019 article is not "of and concerning" Hamilton, is subject to the innocent construction rule and, finally, that the article is at most, libel per quod and Hamilton did not allege special damages.

**{¶10}** Hamilton filed his memorandum contra, appellees replied and on April 30, 2020 the trial court dismissed the complaint with the following language:

> The articles ran in the Times Recorder mentioned in the complaint, motions and reply never mention the Plaintiff by name. And since the person convicted of the crime alleged does not have the same last name as the Plaintiff, only people who knew the people involved prior to any of the

articles would have any idea whom the Plaintiff was or his relationship with the perpetrator.

It is the Court's duty in this motion to determine whether the statements made are actionable. The defense argues that the statements made fall under the innocent construction rule. The Court agrees and makes a finding based upon the application of the innocent construction rule. The statements made are not as a matter of law defamatory.

Decision, Apr. 30, 2020.

**{¶11}** Appellant filed a notice of appeal and submitted two assignments of error:

**{¶12}** "I. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF/APPELLANT, JAMES HAMILTON'S COMPLAINT WHEN IT ERRONEOUSLY DETERMINED THAT THE COMPLAINT ALLEGING DEFAMATION FAILED TO STATE A CLAIM UP(SIC) WHICH RELIEF MAY BE GRANTED PURSUANT TO CIV. RULE 12(B)(6)."

**{¶13}** "II. THE TRIAL COURT ERRED WHEN IT DISMISSED PLAINTIFF/APPELLANT JAMES HAMILTON'S DEFAMATION COMPLAINT WHEN IT FOUND THAT THE ALLEGED DEFAMATORY STATEMENTS SET FORTH IN THE COMPLAINT "WERE NOT DEFAMATORY AS A MATTER OF LAW."

## STANDARD OF REVIEW

**{¶14}** When reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, our standard of review is de novo. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson*

*v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), quoting *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989). In considering a motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997). Rather, the trial court may review only the complaint and documents attached to the complaint or incorporated into the complaint, even if not attached to the complaint. *Fillmore v. Brush Wellman, Inc.*, Ottawa App. OT–03–029, 2004–Ohio–3448 quoting *Connolly Const. Co. v. City of Circleville,* 3rd Dist. Marion No. 9-87-10, 1988 WL 33666, *1 *cause dismissed sub nom. Connolly Constr. Co. v. Circleville*, 38 Ohio St.3d 712, 533 N.E.2d 365 (1988) and *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997). The court may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

## ANALYSIS

### I.

**{¶15}** Hamilton contends that the trial court misapplied Civ.R. 12(b)(6) and dismissed his complaint for defamation in his first assignment of error. He argued that the isolated statement that he excerpted from an undated article in the Zanesville Times Recorder, which he conceded was not defamatory, must be read in conjunction with a second statement that he has drawn from an article published in the same newspaper in June 2019. When read together, Hamilton contends that those statements have only one

reasonable interpretation and that interpretation is that Hamilton "had previously physically abused his child, Lillion Rose Hamilton." (Complaint, paragraph 12)

**{¶16}** Hamilton also contends that appellee Schultz made further defamatory statements to a family member who confronted her about the report that the child showed signs of prior, untreated abuse. Neither these statements nor the aforementioned articles are in the record. Appellees refer to the articles as attached to their pleadings[1] but the only relevant document in the record is what appears to be the first page of the article published on June 14, 2019.[2]  We will consider the language contained within the June article and the allegations in the complaint to decide whether appellant can prove no set of fact that will allow him to recover on his claim for defamation.

**{¶17}**  To state a claim for defamation, Hamilton must allege:

" (1) a false statement of fact was made about the plaintiff; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.,* 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832. A defamatory statement is the unprivileged publication of false and defamatory matter that tends to reflect injuriously on a person's reputation, or exposes a person to 'public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or

---

[1] Appellees refer to attachments in their First Motion to Dismiss, their Reply to Plaintiff's Memorandum Contra the First Motion To Dismiss and the Second Motion To Dismiss, but no documents are attached.

[2] The article ends abruptly and contains a notation "1/3" at the bottom of the page, suggesting that it is the first of three pages.

profession.' " *A & B–Abell Elevator v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995).

*Jamison v. Galena,* 5th Dist. No. 15 CAE 01 007, 2015-Ohio-2845, 38 N.E.3d 1176 ¶ 52

**{¶18}** Hamilton has alleged that the combination of the quotes from the two articles fulfill the requirements to state a claim for defamation. Having been challenged by appellees to support the allegation that the combined reading of the two statements from different articles states a claim for determination, Hamilton refers to cases that require a review of the totality of the circumstances, or the entire article, to determine whether the subject statement may defamatory. He focuses our attention on a reference to "eight articles" in *BMT Mgt. LLC v. Sandusky Newspapers, Inc.*, 6th Dist. Erie No. E-08-058, 2009-Ohio-2601, ¶ 20. In that case, the court emphasized the need to consider a newspaper headline and the entire body of the article together in making the determination as to whether a newspaper article is defamatory, *Id.* at ¶ 19 but did not address Hamilton's assertion of combining isolated statements from two separate articles.

**{¶19}** The second case cited by Hamilton contains an instruction similar to that found in *BMT Mgt LLC, supra*: "When making this legal determination, the trial court must "review the statement under the totality of the circumstances." *Mendise v. Plain Dealer Publishing Co.*, 69 Ohio App.3d 721, 726, 591 N.E.2d 789 (1990). The trial court must read the statements at issue "in the context of the entire article" in order to determine "whether a reader would interpret them as defamatory." *Id.* Likewise, in *Early v. The Toledo Blade*, 130 Ohio App.3d 302, 320–21, 720 N.E.2d 107, 120 (1998), "the court reviewed the entire article, the surrounding headlines, pictures, captions and graphics"

before ruling on the nature of the article described in the complaint, but neither *Mendise* nor *Early* support Hamilton's contention that we must consider statements, isolated from the articles in which they appear, and determine whether those statements, read together and outside the context in which they appear, support a claim for defamation.

{¶20} We are required to review the statements in the context of the entire article to determine if the statements are defamatory, but we disagree with Hamilton's conclusion that the cited cases obligate or authorize this court to interpret an isolated statement plucked from one article, combined with a statement selected from a second article, without reference to the entire article in which the statements appear. The cases cited by Hamilton also provide no support for appellant's contention and instead the courts in *BMT Mgt, LLC, Early* and *Mendise* require review of the nature of the statement in the entire context of the article in which it appears. None adopt the theory that a statement from one article may be isolated from that article, combined with a statement isolated from a second later article and the interpretation of those two isolated statements used to support an allegation of defamation. Such a ruling would open the door to innumerable creative allegations of defamation based upon combinations of two or more statements from different articles.

{¶21} We find the better rule is to examine the statement in the context of the article in which it appears to determine its defamatory nature. Hamilton has not provided a complete copy of either article and relies on only the cited excerpts. He described the articles as "concerning the circumstances surrounding the tragic death of Lillion Rose Hamilton" (Complaint, 10), so we will review the statements in that context and consider

the information provided by the portion of the June article attached to appellees' motion to dismiss.

**{¶22}** Hamilton does not contend that the first statement is defamatory and in fact conceded that the following statement is true to the extent it reports that Lillion was in his custody and maternal family members were complaining. Hamilton did not allege the date that it appeared in the newspaper, but appellees contend that it appeared on January 3, 2019: "Lillion had been placed in the custody of her father months earlier. Maternal family members continuously complained that Lillion was not being properly care for in the custody of her father and Schaefer." The second statement appeared on June 14, 2019: "Despite the broad difference in sentences, the crimes were similar in nature. Two children, each of whom showed signs of pre-existing injuries, died as a result of injuries that went untreated."

**{¶23}** Because Hamilton has not alleged that the statement from the first article was defamatory, we conclude that statement is accurate and not defamatory. We next consider the totality of the circumstances surrounding the statement from the June article to determine if it supports Hamilton's claim from defamation.

**{¶24}** The excerpt from the June article makes no mention of Hamilton or his responsibility for the child, but focuses only on the actions of Schaefer and the injuries to the child. The incomplete copy of the article attached to appellees' motion to dismiss reflects the caption "Women Sentenced in Separate Cases for Death of Children" and addresses the death of Lillion Rose Hamilton as well as another toddler in an unrelated case. The references to Lillion in the portion of the article in the record are:

Two women were sentenced this week in separate cases for causing the death of a child in their care.

On Monday, a Guernsey County judge sentenced 26-year-old Karley M. Schaefer of Cambridge to 36 months in prison for the death of 2-year-old Lillion Rose Hamilton.

* * *

Schaefer's conviction was the result of an Alford plea entered on May 7, to the reduced charge of reckless homicide.

* * *

Despite the broad difference in sentences, the crimes were similar in nature. Two children, each of whom showed signs of pre-existing injuries, died as a result of injuries that went untreated.

{¶25} Hamilton is never mentioned in the portion of the article that appears in the record. The alleged defamatory statement, viewed in the context of the article, is not "of and concerning" Hamilton, but is a comparison of offenses and sentences received by two defendants. *Whiteside v. United Paramount Network*, 12th Dist. Madison No. CA2003-02-008, 2004-Ohio-800, ¶ 15. Hamilton's allegations do not show that the appellees made a false statement of fact about him. *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 365, 588 N.E.2d 280 (1990), as quoted in *Stow v. Coville*, 96 Ohio App.3d 70, 72, 644 N.E.2d 673, 675 (1994). *See also Worldnet Software Co. v. Gannett Satellite Info. Network, Inc.*, 122 Ohio App.3d 499, 504, 702 N.E.2d 149 (1997) ("First, for

a statement to be actionable by a plaintiff, it must be shown that the allegedly defamatory statement was "of and concerning" the plaintiff.")

**{¶26}** The excerpt from the June article is clearly not "of and concerning" Hamilton and thus fails to support a viable claim for defamation. Presumably in recognition of that fault, Hamilton claims that the first statement must be read in conjunction with the later June statement, the combination of which Hamilton interpreted as a defamatory statement that he abused his daughter. While we are not persuaded that either statement fulfills the "of and concerning" requirement, and as noted *infra*, case law does not support this combination, we will address Hamilton's interpretation and review the statements under the "innocent construction" analysis.

**{¶27}** Under the "innocent construction" rule, if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected and the innocent meaning adopted. " *Ferreri v. The Plain Dealer Publishing Co.* 142 Ohio App.3d 629, 642, 756 N.E.2d 712 (2001). The rule protects only those statements that are reasonably susceptible of an innocent construction. *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 146, 2000-Ohio-118, 729 N.E.2d 364.

**{¶28}** The alleged false statement can be reduced to the phrases, "showed signs of pre-existing injuries" and "died as a result of injuries that went untreated." Hamilton claims those words, combined with the statements that Lillion was in his custody and that the maternal family complained that she was not receiving proper care must be interpreted as a statement that Hamilton abused his daughter. We do not accept this limited interpretation of the statement.

**{¶29}** The maternal family's complaint that Lillion was not receiving proper care is subject to different interpretations that do not include physical abuse. The statement that the children "showed signs of pre-existing injuries" fails to define the "signs" or significance of those signs. The "signs" need not be actually injuries, but could be evidence that injuries may have occurred in the young girl's past, even prior to her placement in Hamilton's custody. The word "pre-existing" suggests a time before which the injuries may have occurred, but the ambiguity of the statement does not set a reference point for consideration. While we can determine that the injuries, assuming that Lillion suffered injuries other than the fatal injury, occurred before she was struck by Schaefer, we cannot draw conclusions regarding when or how any injuries occurred.

**{¶30}** Likewise, the reference to the children dying as a result of injuries that went untreated lacks a temporal element in the case of Lillion. The other child mentioned in the article was injured, placed in bed and found unresponsive the next morning. The timing of Lillion's fatal injury is not described in the subject statement or the portion of the article in the record. The cause of death is tied to some "untreated injuries" that are undefined. The text of the article would permit a reasonable construction that Lillion's injury was extant for some period of time without Hamilton's knowledge.

**{¶31}** We find, after reviewing the incomplete article in the record and the statements Hamilton drew from the articles, that a reasonable innocent construction of the alleged defamatory statement can be drawn from the totality of the circumstances that are contained in the record. The brevity and ambiguity of the article and the isolated statements drawn from the article enable an interpretation that Lillion suffered injury under circumstances and at a time that was not within Hamilton's control or responsibility. For

that reason, to the extent that any argument can be made that the articles are "of and concerning" Hamilton, and that these isolated statements can be combined, the innocent construction rule applies to defeat the complaint.

**{¶32}** Finally, we must address the alleged statements of Schultz, allegedly made to one of Hamilton's family members who contacted her about the statement in the article referring to pre-existing injuries. Because we have rejected the narrow interpretation that Hamilton places on the statements in the Times Recorder and found that they were not defamatory, we feel constrained to reach the same conclusion with regard to these allegations. Hamilton's argument also suffers from the lack of any clear statement of Schultz's comments and we find these paraphrased statements are not "of and concerning" Hamilton, but more a dispute between a reader and a reporter regarding the accuracy of a statement that we have found is not defamatory.

**{¶33}** Also, though Hamilton claims that Schultz made these defamatory statements in writing, the record contains no such document, leaving us to speculate as to the content of the statement and further convincing this court that the trial court correctly granted the motion to dismiss.

**{¶34}** We acknowledge that this is a tragic case and likely resulted in heightening the accusations and demands of the maternal family who were critical of the care Lillion received prior to her death and now likely hold Hamilton responsible. Hamilton was given custody of his child for reasons not contained within the record. Persons who objected to that decision will likely hold him responsible for Lillion's death and may rely on newspaper articles to support their position and justify their threats. While such an emotional reaction is expected, it cannot serve to alter the fact that the appellee's articles

were not "of and concerning" Hamilton and that the statements are subject to an innocent construction that prevents them from supporting a claim of defamation.

{¶35}  The first assignment of error is denied.

## II.

{¶36}  Hamilton claims the trial court erred when it found that the statements he claimed were defamatory were not defamatory as a matter of law.   The trial court's conclusion that the statements were not defamatory as a matter of law is directly tied to its holding that the innocent construction rule applies to the statements.  In our review of the first assignment of error, we held that the statements were not defamatory because, under the innocent construction rule, a reasonable and non-defamatory meaning can be derived from the totality of the circumstances described in the pleadings.  Consequently, we have found that the statements described in the complaint are not, as a matter of law, defamatory.  The second assignment of error is therefore moot and further analysis is unnecessary.

**{¶37}** The decision of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, Earle, J. concur.