SNEARY, d.b.a. Car Corral et al., Appellants,

v.

BATY et al., Appellees.

[Cite as *Sneary v. Baty* (1998), 128 Ohio App.3d 142.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1-98-2.

Decided June 4, 1998.

*J. Alan Smith,* for appellants.

*Derek A. Younkman,* for appellees.

Thomas F. Bryant, Judge.

This appeal, submitted on the accelerated docket, has been considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12(5), we have elected to render decision by written opinion. This appeal was taken by plaintiffs-

appellants Gregory A. and Sarah Sneary from a judgment of the Allen County Court of Common Pleas granting summary judgment dismissing their complaint.

On June 10, 1991, appellants agreed to purchase real estate upon which to open a used car lot. Appellants first checked the zoning of the property. The township zoning inspector located the property on the zoning map and told appellants that the property was zoned commercial. Based upon this information, appellants proceeded with the purchase and made improvements to the property. On July 9, 1991, American Township Trustees ("the trustees") notified appellants by letter that a mistake had been made on the township's official zoning map and that the property they had purchased and improved was really zoned residential, thus prohibiting its use for a used car lot. The mistake originated in 1983 when a former zoning inspector incorrectly interpreted a resolution amending zoning in the area and changed the map. Appellants sent a letter to the trustees on July 10, 1991, demanding a change of use permit so that the building plans could be approved. This request was denied, and the trustees suggested that appellants petition for a rezoning of the property, which they did.

Several hearings were held on the issue. At the August 15, 1991 hearing, defendant-appellee Marna Baty was present with her attorney. Appellee stated that appellants knew that the property was residential when they purchased it because the county recorder's office had it marked as residential. Appellee was informed by the trustees at that meeting that the county recorder's office does not keep official records of zoning in the townships and that appellants could not have learned of the error through examination of the records kept by that office. The incident was described by the trustees as an honest mistake by all concerned.

Another hearing was held on August 29, 1991, at which appellee was present. The origin of the mistake was explained to all. However, the trustees denied appellants' petition to change the zoning. Appellants then filed suit against the township, and appellee intervened. Appellants eventually lost the suit to force the township to change the zoning, but the trustees thereafter granted the second petition to rezone the property. Appellee and other residents then petitioned to have the change put to a referendum vote, and it was placed on the November ballot.

Greg Sneary sought election to the office of township trustee. During the campaign, appellee supported Sneary's opponents because of their stance on the rezoning issue. Appellee campaigned against the change in zoning as well as for a change of trustees. In support of her positions, appellee mailed two letters and a copy of a document purportedly from the records of the county recorder's office[1] ("the letters") to over four thousand residents of American Township. The

---

1. The document attached is unidentifiable as to its source and is misleading at the least.

letters contained allegations, among others, that appellants and the trustees had conspired to defraud the citizens of the township and that they knew before the sale that the property was zoned residential, but continued with their plans anyway.

On October 31, 1994, appellants filed a complaint against appellee, alleging defamation, libel, slander, tortious interference with business, intentional and negligent infliction of emotional distress, and conspiracy to commit libel and slander. Appellee filed an answer and a counterclaim alleging abuse of process. In May 1997, both parties filed motions for summary judgment. On December 19, 1997, the trial court granted summary judgment to appellee dismissing all claims brought by appellants and granted summary judgment to appellants dismissing appellee's counterclaim. The trial court held that all of appellee's statements were opinions and thus protected by the Ohio Constitution. No appeal was taken from the dismissal of the counterclaim.

Appellants allege the following assignments of error:

"The trial court abused its discretion and committed reversible error when it found all of appellee's statements to be opinions protected by free speech.

"The trial court improperly granted summary judgment when there existed genuine issues of material fact which could only properly be resolved at trial.

"The trial court erred by dismissing appellants' other causes of action which were not the subject of appellee's motion for summary judgment."

█ █ When reviewing the ruling on a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. Civ.R. 56(C) sets forth the standard for granting summary judgment. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.

█ The first assignment of error claims that the trial court erred by finding appellee's published statements to be opinions. "Section 11, Article I of the Ohio Constitution provides in relevant part: 'Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.'" *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182, 184. Generally, expressions of opinion are constitutionally protected speech. *Id.* The court should consider the following factors when determining whether a statement is fact or opinion: (1) the specific language

used, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. *Id.* at 282, 649 N.E.2d at 185.

As instructed by *Vail*, we will begin the analysis by examining the broad context of the statements. The statements were made in letters mailed in the course of an election campaign to the residents of American Township. The letters were mailed four or five days before election day and asked the recipient to vote against the rezoning and for certain trustees. However, the letters do not state that the contents are the opinions of the writer or that the conclusions presented are commentary. Nor are the letters included in any type of newspaper or other professional publication from which the reader might learn that the letters are only the writer's opinion, not fact.

The second step in determining whether the statements are fact or opinion is to examine the full context of the statements. In *Vail*, the article was written in a sarcastic manner typical of persuasive speech rather than as statements of fact. The author of the article was known as an opinionated columnist, and the word "Commentary" preceded the article.

Here, the letters presented accounts of various events as having truly occurred. The writer was an ordinary citizen, not a familiar political commentator. Although the reader can determine from the letters that the writer is opposing the rezoning and trustee candidates favoring it, they have no background against which to judge the reliability of the written statements as opinions or speculation.

Third, we must consider the specific language used and whether the average reader would consider the statements to be fact or opinion. In this case, the statements made were allegations of the occurrence of various events and the writer's characterization of their import. The following statements are examples of those included in the letters:

"The township agreed this was residential property, but the next day they were dumping stone over the lawn. The new owners worked night and day for 3–4 days and started bringing cars and parking them on the front lawn. Nothing was done to stop the car lot, and one trustee came out one day and watched them dumping stone. He was told by a resident at the time this was illegal, and they should be stopped; but, he did nothing but watch. These are the facts about what happened with the car lot!

"The car lot owner knew before the sale was final; in fact, the sale was contingent upon this being commercial, and he could have gotten his money; the zoning inspector knew before the car lot went in and could have stopped it; and the trustees knew before the car lot went in. A trustee accompanied the car lot owner to the property before the sale, and a trustee watched as the stone was dumped.

"The problem that remains with the car lot today has never been a mistake, it could have been corrected immediately. The problem today is all the people involved in this deception were caught; and their major concern is to keep the information from reaching the voters of American Township. If the car lot owners were telling the truth, they would have won in Court; in fact, they wouldn't have had to go to court. If the township were telling the truth, they wouldn't have had to break so many laws trying to keep the car lot there; and, if the zoning inspector and township attorney were doing their jobs, this would have been stopped before the residents had to pay attorney fees of twelve thousand dollars for this deception." (Underscoring *sic*.)

Based upon these statements, the average reader could only infer that the car lot owners and the township trustees were liars and criminal conspirators. The letters state that "these are the facts."

"The final question is whether the statements are verifiable. Does the author imply that [s]he has firsthand knowledge that substantiates the opinions[s] he asserts?" *Vail* at 283, 649 N.E.2d at 186. In this case, appellee claims that the events described in the letters are facts. Appellee also implies that there are witnesses to these events and that she has proof to back up her allegations. Appellee included a copy of documents, allegedly from the county recorder's office, as evidence of the deception she claims appellants and the trustees perpetrated.

The letters in dispute in this case greatly differ from the publication in *Vail*. There, the publication was printed in a newspaper and was presented as an opinion by a noted political commentator. In this case, the letters were written and sent by a local resident as a recitation of fact. Thus, under the totality of the circumstances test set forth in *Vail*, as a matter of law the statements made by appellee are of facts, not opinions. The determination of the truth or falsity of the contested allegations is thus a question for a finder of fact. The first assignment of error is sustained.

Since the first assignment of error is well taken, the second and third assignments are rendered moot. The judgment of the Court of Common Pleas of Allen County dismissing appellants' complaint is reversed and, in all other respects, the judgment is affirmed. The cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HADLEY and EVANS, JJ., concur.