OPINION
This appeal is brought by Plaintiff-Appellant, Brenda Studer, from a judgment of the Court of Common Pleas of Seneca County granting a motion for summary judgment in favor of Appellees, Seneca County Humane Society and Wyandot County Humane Society, and dismissing Appellant's complaint for replevin, conversion and due process violations with prejudice. For the reasons expressed below, we reverse the trial court's judgment in part.
The following is a summary of the pertinent background facts from which the instant action arose:
 On May 18, 1998, Appellees' agents executed a search warrant on property that Appellant had been renting where she was harboring numerous stray cats and dogs. The agents were accompanied by a licensed veterinarian, Dr. Robert McClung. Upon entering the land, the agents discovered approximately seventy-eight dogs and eighty-one cats living in three separate outbuildings. Among other things, the animals were lacking an adequate supply of fresh air, food and water. Due to the deplorable conditions, the animals were found to be malnourished, injured, dehydrated, manged and diseased. Dr. McClung recommended that all but four of the animals be euthanized immediately.
Based upon this information, Appellant was charged with fourteen counts of cruelty to animals in violation of R.C. 959.13. The case proceeded to a jury trial and Appellant was subsequently found guilty of all charges. The trial court sentenced Appellant to a total of ninety days in jail with eighty-five days suspended. Additionally, the court placed Appellant on probation for a period of five years on the condition that she "not * * * own, keep or harbor any animals in any place in the State of Ohio, except one pet at her residence." Appellant filed an appeal to one of the convictions and this court affirmed the judgment in State v.Studer (Mar. 26, 1999), Seneca App. No. 13-98-46, unreported.
Thereafter, on April 29, 1999, Appellant filed an action against Appellees seeking the return of the live animals seized as a result of the May 18, 1998 investigation. Appellant also asserted claims for conversion and violations of due process. In addition to the county humane societies, Appellant named John Doe as a defendant in the replevin action, claiming that an unknown party or parties had possession of the live animals. Appellees filed a joint answer, admitting that the animals were seized and/or destroyed, but that these actions were within the purview of the immunity statutes set forth in R.C. 2744. Appellant could not perfect service on John Doe due to the fact that she could not ascertain the true identity of the party.
As a result of the service dilemma surrounding John Doe, Appellant filed a single interrogatory asking Appellees to disclose the names and addresses of the individuals who were presently caring for the animals. Wyandot County responded by stating that it had no knowledge of the animals' whereabouts because it was not involved in the post-seizure placement. Seneca County objected to the interrogatory, claiming that the safety of the persons and animals would be jeopardized in the event that Appellant was able to discover the information. In response to this objection, Appellant filed a July 20, 1999 motion to compel, requesting the court to order Seneca County to comply with discovery. The trial court subsequently denied the motion, and Appellant was therefore unable to perfect service on John Doe.
Appellees then filed a joint motion for summary judgment, arguing that regardless of the claims brought forth in Appellant's complaint, they were entitled to judgment as a matter of law based upon the immunity statutes. Appellant did not respond to this motion. Rather, Appellant filed her own motion for partial summary judgment on the replevin claim. The trial court issued an October 25, 1999 judgment entry, denying Appellant's motion. At the same time, the court granted Appellees' motion for summary judgment and dismissed the case with prejudice. This timely appeal followed wherein Appellant sets forth three assignments of error for our review.
Prior to reaching the merits of Appellant's arguments, however, we must address a threshold matter. Since the court's entry did not specifically dispose of the claims asserted against John Doe, nor did the entry contain an "express determination that there is no just cause for delay" under Civ.R. 54(B), we must first determine whether this appeal has been brought from a final order. In answering this question, we point to Civ.R. 3(A), which states:
 A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D).
 The record herein demonstrates that at the time that Appellees filed the motion for summary judgment, service was not obtained upon John Doe nor was the complaint amended in accordance with Civ.R. 15(D). Under these circumstances, it is clear that no action had been commenced against this party. Therefore, the trial court's October 25, 1999 entry properly disposed of all pending claims and can be considered a final, appealable order. See Dillard v. Nationwide Beauty School
(Dec. 11, 1990), Franklin App. No. 90AP-273, unreported.
Since we have concluded that this matter is properly before this court, we must go on to point out the standard that we are bound to follow when reviewing a grant of summary judgment. It is well settled that summary judgment should be entered only upon a finding that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C). When applying this test, the appellate court must review the judgment independently, without deference to any of the conclusions reached by the trial court. Sneary v. Baty
(1998), 128 Ohio App.3d 142. With this standard in mind, we now turn to Appellant's specific assignments of error, which we have elected to address outside of their original sequence.
 III.
 The trial court erred as a matter of law in determining that the Appellees were entitled to immunity under ORC 2744.01 et seq.
 The applicable version of R.C. 2744.02(A)(1) generally provides that a political subdivision is immune from liability for damages in a civil action for, among other things, loss to property allegedly caused by an act or omission of the subdivision or its employees in connection with a governmental or proprietary function. Since the Ohio Revised Code does not specifically include a county humane society in its definition of "political subdivision", our analysis must begin here to determine if Chapter 2744 even applies to the matter at hand.
R.C. 2744.01(F) states:
 "Political subdivision" * * * means a municipal corporation, township, county, school district or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. * * *
 Appellees obviously do not fall within the categories of municipal corporation, township, county, or school district. Thus, in order to be properly considered a political subdivision, Appellees must be classified as a "body corporate and politic." See also, Greene County Agricultural Society v. Liming (Aug. 13, 1999), Greene App. No. 98CA119, unreported, discretionary appeal allowed (1999), 87 Ohio St.3d 1478. "A body corporate and politic is a governmental body or public corporation having powers and duties of government." Uricich v. Kolesar (1936), 132 Ohio St. 115, 118.
Chapter 1717 of the Ohio Revised Code provides for the organization of county humane societies. R.C. 1717.06 allows such a society to appoint agents whose purpose is to prosecute any person guilty of an act of cruelty to animals or other persons. In carrying out this purpose, an agent for a county humane society may utilize the power of arrest. Additionally, if the unlawful act is done in the presence of an agent, R.C. 1717.08 provides that the agent may, among other things, interfere and use an amount of force necessary to prevent the act.
While county humane societies may engage in certain activities that are not governmental in nature, the above statutes demonstrate that the primary purpose of such organizations is law enforcement, an activity traditionally reserved for the government. Therefore, we find that the trial court did not err in concluding that a county humane society is a political subdivision for purposes of the immunity statutes. For an analogous decision, we point to Greene, supra, wherein the Second District Court of Appeals held that a county agricultural society should be classified as a political subdivision.
Just as the court in Greene, we reject Appellant's argument that a humane society is not a "body corporate and politic" under the Ohio Supreme Court's interpretation of that term as stated inHamilton Cty. Bd. of Mental Retardation DevelopmentalDisabilities v. Professionals Guild of Ohio (1989), 46 Ohio St.3d 147,150. The Hamilton court was called upon to determine the issue of whether the Board of Mental Retardation Development Disabilities was a "person" pursuant to R.C. 119.01(F) so as to have the right to appeal a decision of the State Employment Relations Board. The court did not apply its interpretation to a case similar to the one at hand. Furthermore, we are unpersuaded by the argument that Hamilton requires a body corporate and politic to act as an agent of the state government in some technical manner. See Greene at **3.
Having concluded that Appellees are political subdivisions, we must now consider whether the trial court properly found that they were entitled to the benefit of the immunity statutes. R.C. Chapter 2744 sets forth a three-tier analysis. The first tier, R.C. 2744.02(A), vests political subdivisions with "blanket immunity from tort liability arising out of an act or omission by the entity or its agent if the act or omission occurs in the course of a `governmental' or `proprietary' function." Armbrusterv. W. Unity Police Dept. (1998), 127 Ohio App.3d 478, 483.
The second tier, R.C. 2744.02(B), enumerates five exceptions to this general grant of immunity. The only one of these exceptions that could be applicable to this case is contained in R.C.2744.02(B)(2), which states:
 (2) * * *[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision.
 The applicability of this exception depends upon whether Appellees were engaged in a proprietary or governmental function on May 18, 1998.
R.C. 2744.01(C)(1) states that a "governmental function" is one that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement.
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as proprietary function.
 A governmental function is also specified as one that involves the enforcement of any law. R.C. 2744.01(C)(2)(i).
With respect to the functions carried out by Appellees on May 18, 1998, it is apparent that the humane societies were acting for the common good of all citizens and/or were on Appellant's property for the primary purpose of enforcing the laws regarding cruelty to animals. A governmental function, which is described in R.C. 2744.01(C) (1)(b), or (C)(2) cannot be considered a proprietary function. See R.C. 2744.01(G). Since we have concluded that the humane societies were engaged in a governmental function, the exceptions to immunity do not apply herein.
The third tier of the analysis leads us to R.C. 2744.03. This statute makes available further defenses and immunities that the political subdivision may assert. However, R.C. 2744.03 is only applicable in the event that the entity is subject to liability under the above-mentioned exceptions. Ambruster v. W. UnityPolice Dept. (1998), 127 Ohio App.3d 478, 483. Thus, the trial court correctly found that Appellees were immune from tort liability under Chapter 2744.
However, although the trial court properly granted summary judgment on the basis of immunity with respect to the tort claim, namely conversion, we find that the trial court erred in holding that Appellees were immune from Appellant's assertion that her due process rights were violated. Clearly, the due process claim is constitutional in nature and does not sound in tort. R.C. Chapter 2744, the Political Subdivision Tort Liability Act, applies only to tort actions for damages. Brkic v. Cleveland (1997),124 Ohio App.3d 271, 282, citing Big Springs Golf Club v. Donofrio (1991),74 Ohio App.3d 1. Thus, since immunity was not a proper defense for the due process claim, we conclude that the trial court erred in granting summary judgment on this issue.
Based upon the foregoing, Appellant's third assignment of error is overruled insofar as it pertains to the question of tort liability. The allegation is sustained with respect to the due process violation.
II.
 The trial court erred in dismissing Appellant's case for replevin as a matter of law.
 It is undisputed that the trial court proceedings did not address the subject of forfeiture with regard to the live animals seized from Appellant's property. Nonetheless, in concluding that Appellant's claim for replevin was without merit, the trial court relied upon R.C. 2933.41, which states the following:
 (C) A person loses any right that the person may have to the possession, or the possession and ownership, of property if any of the following applies:
 (1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of any offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense.
 We find the trial court's use of this statute misguided. While it is true that Appellant was convicted of fourteen counts of animal cruelty, the record fails to demonstrate that any of these particular animals were the subject of the offenses. Thus, we cannot say, as a matter of law, that Appellant has lost her possessory rights to these animals pursuant to R.C. 2933.41.
Furthermore, contrary to Appellees' argument, we do not find that the trial court's condition of probation, standing alone, automatically divests Appellant of her possessory rights. In addition to the general conditions of probation, the trial court ordered that Appellant was "not to own, keep or harbor any animals any place in the State of Ohio, except one pet at her residence." Since Appellant is permitted to keep a pet, and since the court's order does not specifically prohibit Appellant from keeping one of these four animals, the trial court incorrectly concluded that the conditions of probation stripped Appellant of any possessory rights.
Appellant's second assignment of error is sustained.
I.
The trial court erred in refusing to compel the discovery.
 Appellant complains herein that the trial court improperly denied her motion to compel the discovery of the names and addresses of the individuals who had possession of the animals that are the subject of this litigation. We agree.
It is well settled that trial courts are vested with broad discretion when it comes to matters of discovery. Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, 592. However, this discretion is not limitless. Id.
 Although unusual, appellate courts will reverse a discovery order when the trial court has erroneously denied or limited discovery. * * * Thus, [a]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights. [Citations omitted.]
 Id.
In this case, the trial court denied Appellant's motion to compel without specifying any legitimate basis. As a result, the trial court precluded Appellant from bringing a good faith replevin action against the individuals who currently have possession of the animals. Despite Appellees' arguments to the contrary, we find this information critical to this litigation since an action in replevin may only be asserted against those "having, at the time the suit is begun, actual or constructive possession and control of the property." Black v. Cleveland
(1978), 58 Ohio App.2d 29, 32.
In addition to their assertion that the discovery was not necessary to Appellant's suit, Appellees also argue, without citing to any supporting authority, that since Appellant did not act in accordance with Civ.R. 37(E), she has failed to preserve the discovery issue for appeal. Civ.R. 37(E) states:
 Before filing a [motion to compel discovery], the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought. The motion shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section.
 While the record indicates that Appellant did not make a reasonable effort to resolve the matter, we are not prepared to find that the issue has been waived. According to the Staff Notes pertaining to Civ.R. 37, the purpose of the above requirement "is to endorse and enforce the view that, in general, discovery is self-regulating and should require court intervention only as a last resort." Thus, it appears that the rule was designed more for the benefit of the trial courts, not as an appellate obstacle.
Based upon the foregoing, Appellant's first assignment of error is sustained.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is reversed and remanded insofar as it relates to the issues of discovery, replevin, and due process violations.
The remainder of the judgment is affirmed.
Judgment affirmed in part, reversed in part and remanded forfurther proceedings.
 _____________________________ WALTERS, PRESIDING JUDGE
HADLEY, P.J., concurs.
BRYANT, J., dissents.