[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court summary judgment entered in favor of Wallace W. Higgins, defendant below and appellee herein.
Issac Wampler, plaintiff below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN APPLYING THE STANDARDS SET FORTH IN VAIL v. PLAIN DEALER PUBLISHING CO. (1995), 72 Ohio St.3d 279 AND SCOTT v. NEWS-HERALD (1986), 25 Ohio St.3d 243 BECAUSE THOSE STANDARDS APPLY ONLY TO STATEMENTS MADE BY MEDIA DEFENDANTS."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN CONCLUDING THAT STATEMENTS CONTAINED IN DEFENDANT'S DEFAMATORY LETTER, SUCH AS `LINDA'S CARDINAL MARKET, AT THE CORNER OF SCIOTO AND WEST MAIN STREETS, IS BEING FORCED OUT OF BUSINESS BY THE EXORBITANT RENT NOW BEING DEMANDED BY THE PRESENT OWNER OF THE BUILDING,' WERE STATEMENTS OF OPINION."
Our review of the record reveals the following facts pertinent to the instant appeal. On September 25, 1998, the Circieville Herald published an article concerning the closing of Linda' s Cardinal Market. The article indicated that the owner decided to close the market due to "a gradual decline in the volume of business at the store and an increase in lease fee for the building, which was sold earlier this year."
On September 28, 1998, appellee's "Letter to the Editor" was published in the Circleville Herald. The letter addressed the closing of Linda's Cardinal Market and reads as follows:
"Dear editor:
 Downtown Circleville is about to suffer a serious loss. Linda's Cardinal Market, at the corner of Scioto and West Main streets, is being forced out of business by the exorbitant rent now being demanded by the present owner of the building. Most of us who live in the downtown area have depended on Linda and her predecessors, who have been in the grocery business on that site for the past 50 years.
 Ward Skinner and Linda have run a friendly and accommodating store. They knew, understood, and sympathize with their customers. Now, because of one man's self-centered greed, all of that is going to end.
 Too many downtown properties belong to people who care nothing for Circleville and who have no vision for the future. Circleville is a unique place, and everyone could profit from that uniqueness. Instead, some are trying to make it conform to the world for their own profit. They are willing to sell out to some faceless national corporation with no motive but profit and no interest in our history, our architecture, or our tradition. They cheerfully takes the money and run and `let the public be damned!'
 The owner of the Cardinal Market building sold his own Watt Street property, for an astronomical figure, to a mindless corporation. Once he had a taste of the blood of easy money, he has apparently become a ruthless speculator. He would, I'm sure, sell the whole town to heartless corporations so that they might turn it into one, great, ugly, sprawling shopping mall. It is pathetic that the whole town must suffer because of the greed of a few uncaring people."
On January 20, 1999, appellant filed a complaint alleging that appellee, through his September 28, 1998 letter to the editor, defamed appellant. Appellant specifically alleged:
 "On or about September 28, 1998, defendant caused to be published in the Circleville Herald a letter in which he falsely stated that plaintiff had forced Ms. McKee out of business by charging her an exorbitant rent. Defendant further impugned plaintiff's personal and professional integrity and reputation by, among other things, characterizing plaintiff as a `ruthless speculator.'"
On November 1, 1999, appellee filed a motion for summary judgment. Appellee asserted that his letter to the editor contained his opinions regarding the closing of the market. Appellee argued that pursuant to Ohio law, expressions of opinion cannot constitute defamatory statements and are nonactionable.
On December 17, 1999, the trial court granted appellee's motion for summary judgment. The trial court agreed with appellee that his letter to the editor represented appellee's opinion on the matter. The trial court stated that under the totality of the circumstances, the language appellee used in his letter constituted opinion because: (1) an ordinary reader would understand the language appellee used in his letter "for just what it is — one person's frustration with the perceived plight of many small downtown areas due to small business closures and large corporate takeovers"; (2) "[t]he letter conjures a vast array of highly emotional responses that will vary from reader to reader"; (3) the "general tenor of the column is sarcastic, more typical of persuasive speech than factual reporting." Thus, the trial court, finding that the alleged defamatory statements constituted opinion and were nonactionable, granted appellee' s motion for summary judgment. Appellant filed a timely notice of appeal.
Appellant's two assignments of error are interrelated, both addressing the propriety of the trial court's decision granting appellee's motion for summary judgment, and we will address the two assignments of error together.
In his first assignment of error, appellant contends that the trial court erred by granting appellee's motion for summary judgment. In particular, appellant asserts that the trial court, when determining that appellee' s statements were non-defamatory, erroneously applied the opinion privilege set forth in Vail v.Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279,649 N.E.2d 182, and Scott v. News-Herald (1986), 25 Ohio St.3d 243,496 N.E.2d 699. Appellant argues that the opinion privilege applies only to statements made by the media. We do not agree with appellee that the opinion privilege is so limited.
In his second assignment of error, appellant asserts that the trial court erred by determining that appellee' s letter to the editor contained statements of protected opinion. We again disagree with appellant.
Initially, we note that when reviewing trial court' s decision regarding a motion for summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd.of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153,1157; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g. Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a material fact. Vahila, supra; Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273. The moving party cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case. Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,147, 677 N.E.2d 308, 318; Dresher, supra. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); Dresher, supra.
 "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment."
Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.
(1996), 110 Ohio App.3d 732, 742, 675 N.E.2d 65, 72-73. Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Dresher, supra.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher, supra; Jackson v. Alert Fire Safety Eguip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1031.
The substantive law determines whether a genuine issue of material fact remains. Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202; Turnerv. Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126;Perez v. Scrips-Howard Broadcasting Co. (1988), 35 Ohio St.3d 215,218-19, 520 N.E.2d 198, 202. As the court stated inAnderson, supra:
 "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."
In order to survive a properly supported motion for summary judgment in a defamation action, a plaintiff must establish that genuine issues of material fact remain as to whether: (1) the defendant made a false and defamatory statement about the plaintiff; (2) the statement was publicized to a third party without privilege to do so; (3) the defendant made the false and defamatory statement with some degree of fault; and (4) the statement was defamatory per se or caused special harm to the plaintiff. See Akron-Canton Waste Oil Inc. v. Safety-Kleen OilServ., Inc. (1992), 81 Ohio App.3d 591, 611 N.E.2d 955. Failure to establish a genuine issue of material fact as to any one of the foregoing elements renders summary judgment appropriate. SeeLang v. Trimble-Webber (Mar. 30, 2000), Cuyahoga App. No. 75692, unreported.
A defamatory statement generally is defined "as a false * * * publication, made with some degree of fault, reflecting injuriously on a person' s reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession." A B-Abell Elevator v. Columbus/Cent. Ohio Bldg.
(1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289; see, also,Dale v. Ohio Civ. Serv. Emp. Assn. (1991), 57 Ohio St.3d 112,117, 567 N.E.2d 253, 258; Matalka v. Lagemann (1985), 21 Ohio App.3d 134,136, 486 N.E.2d 1220, 1222; 3 Restatement of the Law 2d, Torts (1977) 156, Section 559 and Comment b. The Restatement explains that a communication is defamatory if: (1) "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"; (2) "it exposes another to hatred, ridicule, or contempt"; or (3) it "tends to disparage another by reflecting unfavorably upon his personal morality or integrity." Id. An individual may be defamed by either written or spoken words. The former is known as "libel"; the latter is known as "slander." See Lawson v. AK Steel Corp. (1997),121 Ohio App.3d 251, 256, 699 N.E.2d 951, 959.
A court must decide as a matter of law whether a certain statement alleged to be defamatory is actionable. Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, 372, 453 N.E.2d 666,669. In cases raising free speech issues, an appellate court has an obligation to independently examine the entire record in order to ensure that liability for the allegedly defamatory statement does not intrude upon "the field of free expression." Bose Corp.v. Consumers Union of United States, Inc. (1984), 466 U.S. 485,499, 104 S.Ct. 1949, 80 L.Ed.2d 502.
Certain statements are absolutely or conditionally privileged. If a statement is absolutely privileged, the statement is nonactionable, although the statement otherwise may fall within the ambit of a defamatory communication. See, e.g.,Stow v. Coville (1994), 96 Ohio App.3d 70, 72-73, 644 N.E.2d 673,675, discretionary appeal disallowed (1994), 71 Ohio St.3d 1412,641 N.E.2d 1110.
In Milkovich v. Lorain Journal Co. (1995), 497 U.S. 1, 18-21,110 S.Ct. 2695, 111 L.Ed.2d 1, the United States Supreme Court refused to recognize a separate constitutional privilege for statements of opinion. The Court reasoned that "expressions of `opinion' may often imply an assertion of objective fact,"Id., 497 U.S. at 18, 110 S.Ct. 2695, 111 L.Ed.2d 1, and that its prior decisions addressing the requirements necessary to sustain a defamation action adequately protected statements that may be classified as opinion. Id., 497 U.S. at 14-17, 110 S.Ct. 2695,111 L.Ed.2d 1.
The Ohio Supreme Court, however, has interpreted the Ohio Constitution[1] to provide "a separate and independent guarantee of protection of opinion." Vail v. Plain Dealer Publishing Co.
(1995), 72 Ohio St.3d 279, 281, 649 N.E.2d 182; see, also, Scottv. News-Herald (1986), 25 Ohio St.3d 243, 250, 496 N.E.2d 699,705. Thus, in Ohio allegedly defamatory statements that constitute opinion enjoy an absolute privilege and may not give rise to a cause of action for defamation. "Once a determination is made that specific speech is `opinion,' the inquiry is at an end. It is constitutionally protected." Vail,72 Ohio St.3d at 284, 649 N.E.2d at 186-87 (Douglas, J., concurring).
We begin our review of the statements in the case at bar with the well-settled principle that: "`Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. * * *'" Scott, 25 Ohio St.3d at 245,496 N.E.2d at 701 (quoting Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323,339-40, 94 S.Ct. 2997, 41 L.Ed.2d 789)
The genesis of the opinion privilege arose in Scott. InScott, the court recognized: "[O]ur democratic society is founded upon the freedom to voice objections concerning thestatus quo, and is dependent upon the interplay of conflicting viewpoints to improve itself and our justice system." Id.,25 Ohio St.3d at 245, 496 N.E.2d at 702.
Thus, the Scott court held: "Expressons of opinion are generally accorded absolute immunity from liability * * *." Id.,25 Ohio St.3d at 250, 496 N.E.2d at 705; see, also, Vail,72 Ohio St.3d at 280, 649 N.E.2d at 184. The underlying rationale for the opinion privilege "is to avoid self-censorship, whereby overbroad defamation standards result in the stifling of important non-defamatory material." Scott, 25 Ohio St.3d at 245,496 N.E.2d at 702.
In Scott and Vail, the court set forth a totality of the circumstances test to be used when determining whether an allegedly defamatory communication is protected opinion.
 "When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared."
Vail, syllabus, following Scott. "The determination of whether an averred defamatory statement constitutes opinion or fact is a question of law * * *." Scott, 25 Ohio St.3d at 250,496 N.E.2d at 705.
The first factor under the totality of the circumstances test requires a court to consider the specific language used. In examining the specific language used, the primary concern is with the "common meaning of the allegedly defamatory statement." Id.,25 Ohio St.3d at 250, 496 N.E.2d at 706; see, also, Vail,72 Ohio St.3d at 282; 649 N.E.2d at 186. Additionally, a court should consider "whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion; whether the language has a readily ascertainable meaning or is ambiguous." Vail,72 Ohio St.3d at 282, 649 N.E.2d at 186.
The second factor under the totality of the circumstances test requires a court to consider whether the statement is verifiable. When the "`statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content.'" Scott,25 Ohio St.3d at 251-52, 496 N.E.2d at 707 (quoting Ollman v. Evans (C.A.D.C. 1984), 750 F.2d 970, 979); Haynes v. Alfred A. Knopf, Inc.
(C.A.7, 1993), 8 F.3d 1222, 1227 ("If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, a conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.")
The third factor requires a court to examine the general context of the statement.
 "Objective cautionary terms, or `language of apparency' places a reader on notice that what is being read is the opinion of the writer. Terms such as `in my opinion' or `I think' are highly suggestive of opinion but are not dispositive, particularly in view of the potential for abuse."
Scott, 25 Ohio St.3d at 252, 496 N.E.2d at 707. Moreover, appearance of the statement in a editorial article may lead to the conclusion that the statement constitutes protected opinion. See Vail, 72 Ohio St.3d at 282, 649 N.E.2d at 185 (finding that article appearing in "Commentary" column within the "Forum" page of the newspaper led to the conclusion that the general context of the article is opinion); Condit v. Clermont County Review
(1996), 110 Ohio App.3d 755, 761, 675 N.E.2d 475, 479
("Editorials are, by definition, articles that express views and opinion * * * and are commonly understood to be so."); Sack, Defamation (3 Ed. 1999) 4-24 to 4-25, Section 4.3.1.[2]
The fourth factor under the totality of the circumstances test requires a court to consider the broader context in which the statement appeared. When evaluating a statement that appears in a newspaper, a court "must examine the type of article and its placement in the newspaper and how those factors would influence the reader' s viewpoint on the question of fact or opinion."Scott, 25 Ohio St.3d at 253, 496 N.E.2d at 708. Additionally, a court should be cognizant that "`[d]ifferent types of writing have * * * widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion.'" Scott, 25 Ohio St.3d at 253, 496 N.E.2d at 708
(quoting Ollman, 750 F.2d at 979). Statements that constitute subjective hyperbole are more likely to be considered opinion.Vail, 72 Ohio St.3d at 282, 649 N.E.2d at 186.
In Vail, an article appeared in the Forum section of ThePlain Dealer concerning Vail's campaign for the state senate. The article bore the caption, "Commentary." The author of the article wrote: (1) "Loren Loving Vail doesn't like gay people"; and (2) "[Vail] has added gay-bashing to the repertoire of right-wing, neo-numbskull tactics she is employing * * * in her increasingly distasteful campaign * * *" The Vail court applied the totality of the circumstances test to the challenged statements and concluded that the article was protected opinion and could not give rise to a defamation claim.
With respect to the first factor, the specific language used, the Vail court found the language in the article to "lack
precise meaning and would be understood by the ordinary reader for just what it is — one person's attempt to persuade public opinion." Id., 72 Ohio St.3d at 282-83, 649 N.E.2d at 186. The court concluded that the "term[s] conjure a vast array of highly emotional responses that will vary from reader to reader."Id., 72 Ohio St.3d at 283, 649 N.E.2d at 186.
The Vail court further determined that the second factor, whether the statement is verifiable, weighed in favor of finding that the statement constituted protected opinion. The court found the language used in article to be "value-laden and represents a point of view that is obviously subjective." Id.,72 Ohio St.3d at 283, 649 N.E.2d at 186.
With respect to the third factor, the general context of the article, the court noted that the general tenor of the article led to conclusion that the statements constituted opinion:
 "The words `forum' and `commentary' convey a message that the reader of columns so designated will be exposed to the personal opinions of the writer. Such a column is distinguished from a news story which should contain only statements of fact or quotes of others, but not the opinion of the writer of the story."
Id., 72 Ohio St.3d at 282, 649 N.E.2d at 185.
The fourth factor, the broader context in which the statement appeared, also weighed in favor of finding that the statement represented opinion. The court stated that "[t]he general tenor of the column is sarcastic, more typical of persuasive speech than factual reporting." Id.,72 Ohio St.3d at 282, 649 N.E.2d at 186.
In Condit v. Clermont County Review (1996), 110 Ohio App.3d 755,675 N.E.2d 475, discretionary appeal disallowed (1996),77 Ohio St.3d 1469, 673 N.E.2d 135, the court concluded that an editorial stating that the plaintiff belonged to a political party of "fascists," of anti-Semites, and of "anti-abortionists whom even Right to Life shuns" constituted protected opinion.Id., 110 Ohio App.3d at 758, 675 N.E.2d at 476. The author further stated that "the ideas they extol have done immeasurable violence over the centuries both to the Jewish people and to the Roman Catholic Church." Id., 110 Ohio App.3d at 758,675 N.E.2d at 476. The Condit court found that under the totality of the circumstances test, the statements constituted protected opinion.
The court determined that the first factor, the specific language used, would only lead a reasonable reader to conclude that the statements were opinion. Id., 110 Ohio App.3d at 760,675 N.E.2d at 478. The court noted that terms such as "fascists" and "anti-Semites" are hyperbolic and ambiguous. Id.,110 Ohio App.3d at 760, 675 N.E.2d at 478.
With respect to the second factor, whether the statement is verifiable, the court found the language in the article to be "too general to be verifiable and they do not imply undisclosed facts that would allow the statements to be verified." Id.,110 Ohio App.3d at 761, 675 N.E.2d at 479.
The court further concluded that the third factor, the general context of the statement, weighed in favor of finding that the statements constituted protected opinion. The court noted that the statements appeared in "editorials, not news stories." Id., 110 Ohio App.3d at 761, 675 N.E.2d at 479. The court stated: "Editorials are, by definition, articles that express views and opinion * * * and are commonly understood to be so." Id., 110 Ohio App.3d at 761, 675 N.E.2d at 479 (citing Webster's Third International Dictionary (1981), 723)
The Condit court further concluded that the fourth factor, the broader context in which the statements appeared, led to the conclusion that the statements were protected opinion. The court noted: "`[I]t is well understood that editorial writers and commentators frequently "resort to the type of caustic bombast traditionally used in editorial writing to stimulate public reaction."' [Ollman, 750 F.2d] at 984 (quoting Natl. Rifle Assn.v. Dayton Newspapers, Inc. (S.D.Ohio 1983), 555 F. Supp. 1299)."Id., 110 Ohio App.3d at 761, 675 N.E.2d at 479. With respect to the editorial in question, the Condit court stated:
 [The author] makes no attempt to hide his bias or to be impartial, nor is it likely that a reader would view his comments as an attempt at impartial reportage. * * * The statements are pointed, biting, and tough. They appear in columns of political commentary, and it is apparent that the writer' s intent is to persuade readers to his point of view.
Id., 110 Ohio App.3d at 761, 675 N.E.2d at 479 (citation omitted)
In Sneary v. Baty (1998), 128 Ohio App.3d 142,713 N.E.2d 1145, the court concluded that the statements did not constitute protected opinion. In Sneary, during an election campaign the defendant mailed letters containing allegations that the plaintiffs had conspired to defraud the citizens of the township.[3] The Sneary court examined the statements according to the test set forth in Vail and Scott and concluded that the statements did not constitute protected opinion.
With respect to the first factor, the specific language used, the court noted that "the statements made were allegations of the occurrence of various events and the writer' s characterization of their import," and that the author stated "these are the facts." Id., 128 Ohio App.3d at 146,713 N.E.2d at 1148. The court found that average reader could only infer that the statements contained facts — that the car lot owners and the trustees were liars and criminal conspirators. Id.
The court also found that the second factor, whether the statements are verifiable, weighed in favor of finding that the statements constituted fact. The court noted that the author described the statements as fact and indicated witnesses exist who could help prove her allegations. Id.,128 Ohio App.3d at 147, 713 N.E.2d at 1148.
The third factor, the Sneary court determined, also tended to illustrate that the statements constituted fact. The court found that the author of the letters was not an editorial or political commentator, but an ordinary citizen sending letters to members of the community. Id., 128 Ohio App.3d at 146,713 N.E.2d at 1148. Moreover, the court noted that the tone of the letters indicated that the events described in the letters actually occurred. The court stated: "Although the reader can determine from the letters that the writer is opposing the rezoning and trustee candidates favoring it, they have no background against which to judge the reliability of the written statements as opinions or speculation." Id.
With respect to the fourth factor, the broader context in which the statements appeared, the court noted that the statements appeared in letters mailed during an election campaign. Id. The court found that the letters did not indicate that the statements contained the opinions of writer or that the statements constituted commentary, as was the case in Vail. Id.
The court also noted that unlike Vail, the letters were not published in a newspaper or other professional publication from which the reader might learn that the letters constituted opinion and not fact. Id., 128 Ohio App.3d at 146, 713 N.E.2d at 1148.
In Leal v. Holtvogt (1998), 123 Ohio App.3d 51,702 N.E.2d 1246, the court determined that the statements did not constitute protected opinion. In Leal, the defendants sold a one-half interest in an Arabian stallion to the plaintiffs. The relationship between the parties soured and the plaintiffs subsequently "made disparaging remarks about the integrity and honesty of [the defendants]." Id., 123 Ohio App.3d at 79,702 N.E.2d at 1264. The defendants alleged that Mrs. Leal contacted some of the defendants' customers and told the customers that Mr. Holtvogt had lied to the Leals about the horse's value, show records, and stud fees, and that Mr. Holtvogt "was cheating her out of breeding fees for their partnership." Id.,123 Ohio App.3d at 80, 702 N.E.2d at 1265. Applying the totality of the circumstances test, the Leal court concluded that the statements could only be interpreted as fact.
The Leal court determined that consideration of the first factor, the specific language used, led to the conclusion that the statements were factual in nature. The court found that statements that Mr. Holtvogt lied and "was cheating her out of her breeding fees" possessed a "clearly ascertainable" meaning and were not ambiguous. Id., 123 Ohio App.3d at 80,702 N.E.2d at 1265.
With respect to the second factor, whether the statements are verifiable, the court determined that whether a person lied and is untrustworthy, as Mrs. Leal had alleged, could be verified. Id.
The court further determined that the third and fourth factors weighed in favor of finding that the statements constituted fact. The court noted that the statements were made after a business relationship had soured and were made to other individuals who interacted with the defendants. Id.
In Smith v. Papp (1996), 114 Ohio App.3d 442, 683 N.E.2d 384, discretionary appeal disallowed (1997), 77 Ohio St.3d 1548,674 N.E.2d 1186, the court, applying the totality of the circumstances test, determined that the challenged statements were not protected opinion. In Smith, the plaintiff instituted a defamation action based upon an informational campaign flier associated with a United Automobile Workers' union shop chairman election at an automobile parts manufacturing plant. The literature generally impugned the fitness of the plaintiff to hold elected union office. For example, one of the statements asserted: "[The plaintiff] is the ex-official who reopened the Local contract about 3-4 months before its natural expiration in 1990, and when I asked him why, he whimpered like a little mouse: `Well, the company wanted it, they needed some concessions.'" The court concluded that the literature contained statements of fact and that the author claimed first-hand knowledge of a number of the statements.
In Robb v. Lincoln Publishing, Inc. (1996), 114 Ohio App.3d 595,683 N.E.2d 823, discretionary appeal disallowed (1997),78 Ohio St.3d 1410, 675 N.E.2d 1249, the court found the statement that "1.5 million is `missing,' and so is the LSD" to constitute a statement of fact. The court noted that the statement is readily verifiable and purports to be a statement of objective fact rather than a point of view. Id., 114 Ohio App.3d at 620,683 N.E.2d at 839.
In North Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434,648 N.E.2d 875, the court found the following language spoken to radio news reporter not to constitute protected opinion:
 "Well I think [the committee's] intent is to make North Coast be truthful about its dealings with the City and the flavor I got from the meeting today was that if North Coast doesn't comply, that they would consider stronger action such as revoking the franchise and asking another operator, to, you know, to buy North Coast out."
Id., 98 Ohio App.3d at 440, 648 N.E.2d at 878. The court determined that an ordinary reader would interpret the statement as implying that the plaintiff lied to the city to obtain a cable franchise.
In Worldnet Software Co. v. Gannett Satellite InformationNetwork. Inc. (1997), 122 Ohio App.3d 499, 702 N.E.2d 149, the defendants published reports that the plaintiffs were involved in a "scam" and "scheme." Id. 122 Ohio App.3d at 505, 702 N.E.2d 153. The court found that the totality of the circumstances suggested that the statements were subjective, opinionated comments. Id., 122 Ohio App.3d at 506, 702 N.E.2d at 153-54. The court determined, however, that the following statements constituted factual assertions: (1) that the plaintiffs' business "appears to be a pyramid scam"; (2) that the plaintiffs' business "does not respond to complaints"; and (3) that the plaintiffs' business "does not take care of its customers." Id.,122 Ohio App.3d at 506 n. 3, 702 N.E.2d at 154. The court concluded that: (1) the language does not appear hyperbolic and is readily understandable; (2) the statements imply first-hand knowledge and are verifiable; and (3) the statements did not occur "in the midst of a commentary or editorial." Id.,122 Ohio App.3d at 506-07, 702 N.E.2d at 154.
In the case at bar, we agree with the trial court's conclusion that under the totality of the circumstances, the challenged statements constitute protected opinion. The statements contained in appellee's letter to the editor are more similar to the statements considered in Vail and Condit, than to the statements reviewed in Sneary, Leal, Smith, Robb, and NorthCoast Cable.
The first factor, the specific language used, indicates that the language used is opinion. The phrase "exorbitant rent" does not have a readily ascertainable meaning and appears to be mere hyperbole. Webster's Encyclopedic Dictionary (1989) defines "exorbitant" as "much greater than is justified, greatly excessive." Id. at 332. What is "much greater than is justified" or "greatly excessive" will very from reader to reader. Moreover, the word "exorbitant" is more likely to appear in exaggerated, opinionated writing than in factual reporting. Additionally, the phrases "self-centered greed"; "astronomical figure"; "mindless corporation"; "blood of easy money"; and "ruthless speculator" represent subjective, hyperbolic statements. We believe that a reasonable reader of appellee's letter to the editor would conclude that the language used did not convey information of a factual nature. See Vail,72 Ohio St.3d at 282, 649 N.E.2d at 186. Rather, a reasonable reader would view the statements as conveying one person' s opinion on the subject matter. Like the court in Vail, the language used in appellee's letter "lacks precise meaning and would be understood by the ordinary reader for just what it is — one person's attempt to persuade public opinion." Id., 72 Ohio St.3d at 282-83,649 N.E.2d at 186.
The second factor, whether the statement is verifiable, also tends to weigh in favor of finding that the allegedly libelous communication constitutes opinion. Appellee' s letter does not indicate that he possesses objectively verifiable facts or that he possesses first-hand knowledge of the circumstances surrounding the closing of Linda's Cardinal Market. Because the statements lack precise meaning, the challenged statements do not have a plausible method of verification. Like the court in Vail,
we believe that the language used in appellee' s letter to the editor is "value-laden and represents a point of view that is obviously subjective." Id., 72 Ohio St.3d at 283,649 N.E.2d at 186.
The third factor, the general context of the statement, also indicates that appellee's letter to the editor constitutes protected opinion. The statements were printed in the Letters to the Editor section of the Circleville Herald. The Letter to the Editor section of any newspaper is a common forum for citizens of the community to express viewpoints on a wide-variety of subjects. A reasonable reader of such a letter would recognize that the statements contained within the letter represents one individual's opinion and not factual reporting. See Condit,110 Ohio App.3d at 761, 675 N.E.2d at 479; see, also, Vail,72 Ohio St.3d at 282, 649 N.E.2d at 185.
Finally, the fourth factor, the broader context in which the article appeared, further weighs in favor of finding that the article constitutes opinion. As we noted above, the statements appeared in a section of the newspaper commonly reserved for opinion. The statements were made after the closing of a long-time business in the Circleville business district. The statements within the letter are more typical of persuasive writing than of factual reporting. Vail, 72 Ohio St.3d at 282,649 N.E.2d at 186. Like the statements in Vail and Condit,
appellee's letter represents "the type of caustic bombast traditionally used in editorial writing." See Condit,110 Ohio App.3d at 761, 675 N.E.2d at 479 (internal quotations omitted)
Consequently, we agree with the trial court's conclusion that the totality of the circumstances demonstrate that the statements contained in appellee' s letter to the editor constitute protected opinion.[4]
Assuming, arguendo, that one possibly could interpret appellee' s letter to the editor as possessing a defamatory meaning, the "innocent construction rule" prevents us from adopting the defamatory meaning. The "innocent construction rule" provides: "[I]f allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted."Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 372,453 N.E.2d 666, 669; see, also, Van Deusen v. Baldwin (1994),99 Ohio App.3d 416, 419, 650 N.E.2d 963, 965. Thus, we reject the defamatory interpretation in favor of the innocent.
Appellant contends, however, that we are prohibited from applying the opinion privilege in the case at bar. Appellant argues that the Ohio Supreme Court has not extended the opinion privilege to cases involving non-media defendants. Appellant interprets the court's language in Vail and Scott as creating an opinion privilege only for members of the media.
In support of his argument, appellant cites Conese v.Nichols (1998), 131 Ohio App.3d 308, 722 N.E.2d 541. In Conese, the court recognized that in Ohio, "`expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution as a valid exercise of freedom of the press.'" Id.,131 Ohio App.3d at 315, 722 N.E.2d at 545, (quoting Vail v. PlainDealer Publishing Co. (1995), 72 Ohio St.3d 279, 280,649 N.E.2d 182, 184). The Conese court stated:
 "Thus far, the Ohio Supreme Court has extended this absolute privilege to express opinions only to media defendants (ancillary to `freedom of the press' and only to statements made directly by, not to, the media * * *. This absolute privilege has not yet been extended to all statements of opinion, by anyone, or to the media for the republication of the opinion of others. Thus, we believe that Vail has no application in this case."
Id., 131 Ohio App.3d at 315-16, 722 N.E.2d at 545-46 (citations omitted).
We, however, disagree with the Conese court that the opinion privilege is limited to media defendants. Neither Scott nor Vail
explicitly limit the opinion privilege to cases involving media defendants. Additionally, the Scott court held that the Ohio Constitution protects opinion. Section 11, Article I of the Ohio Constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects * * *; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." Nothing in Section 11, Article I of the Ohio Constitution purports to limit to the press the freedom to speak. Rather, the language of the Constitution extends to all citizens the freedom to speak. Furthermore, we note that other Ohio courts have considered the opinion privilege in defamation cases that did not involve media defendants. See Sneary, Leal, Smith.
Moreover, as one court has noted, a successful defamation action requires the plaintiff to prove falsity, and because an opinion is neither true nor false, a true opinion cannot be defamatory irrespective of the identity of the parties. SeeSavage v. Pacific Gas Elec. Co. (1993), 21 Cal.App.4th 434,444-45, 26 Cal.Rptr.2d 305, certiorari denied, (1994),513 U.S. 820; see, also, Sack, supra, 4-14, Section 4.2.4.2 ("Defamation is actionable only if false; opinions cannot be false; opinions are not actionable.")
Thus, we disagree with appellant that the opinion privilege is limited to media defendants. As noted-above, a successful defamation action requires the plaintiff to prove falsity, irrespective of whether the defendant is the media or a private individual or entity. We do not believe that the status of a defendant affects a plaintiff's burden of proving falsity. Because an opinion cannot be false, an opinion cannot be defamatory regardless of the status of the parties.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] Section 11, Article I of the Ohio Constitution provides:
 Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.
[2] In Sack's treatise, the author explains:
 "If a statement appears in a place usually devoted to, or manner usually thought of as representing personal viewpoints, it is also likely to be understood — and deemed by a court — to be nonactionable opinion. A letter to the editor, for example, an editorial or `oped' column or broadcast, a cartoon, a critical parody or satire of a public person, a sports column, or a critical review are ordinarily not actionable, although this factor alone is by no means determinative."
Id. (footnotes omitted)
[3] The statements contained in the letters follow:
 "The township agreed this was residential property, but the next day they were dumping stone over the lawn. The new owners worked night and day for 3-4 days and started bringing cars and parking them on the front lawn. Nothing was done to stop the car lot, and one trustee came out one day and watched them dumping stone. He was told by a resident at the time this was illegal, and they should be stopped; but he did nothing but watch. These are the facts about what happened with the car lot!
 The car lot owner knew before the sale was final; in fact, the sale was contingent upon this being commercial, and he could have gotten his money; the zoning inspector knew before the car lot went in and could have stopped it; and the trustees knew before the car lot went in. A trustee accompanied the car lot owner to the property before the sale, and a trustee watched as the stone was dumped.
 The problem that remains with the car lot today has never been a mistake, it could have been corrected immediately. The problem today is all the people involved in this deception were caught; and their major concern is to keep the information from reaching the voters of American Township. If the car lot owners were telling the truth, they would have won in Court; in fact, they wouldn't have had to go to court. If the township were telling the truth, they wouldn't have had to break so many laws trying to keep the car lot there; and, if the zoning inspector and township attorney were doing their jobs, this would have been stopped before the residents had to pay attorney fees of twelve thousand dollars for this deception."
Id., 128 Ohio App.3d at 146-47, 713 N.E.2d at 1148.
[4] A host of cases exist that illustrate the type of language courts interpret as protected opinion. See Stow v. Coville
(1994), 96 Ohio App.3d 70, 644 N.E.2d 673 (citizen's statement to newspaper reporter that city' s manner of handling her tax dispute was "extortion"); Stepien v. Franklin (1988), 39 Ohio App.3d 47,528 N.E.2d 1324 (sports radio host's description of a public sports figure as "stupid," "dumb," "Buffoon," "nincompoop," "scum," "a cancer," "an obscenity," "gutless liar," "egomaniac," "suicidal," and "lunatic"); see, also, Chapin v. Knight-Ridder,Inc. (C.A.4, 1993), 993 F.2d 1087 (charity charging "hefty markups" on goods shipped to American troops in the Persian Gulf)Phantom Touring v. Affiliated Publications (C.A.1, 1992),953 F.2d 724, certiorari denied (1992), 504 U.S. 974 (the theater production was a "Fake Phantom," a "rip-off, a fraud, a scandal. a snake-oil job"); Yeagle v. Collegiate Times (Va. 1998), 297 S.E.2d 136[497 S.E.2d 136] (reference to university's vice president of student affairs as the "Director of Butt Licking"); Dulagrian v. Stone (Mass. 1995), 652 N.E.2d 603
(use of "Highway Robbery" as title for television report on automobile collision appraisal services); Lund v. Chicago Northwestern Transp. Co. (Minn.Ct.App. 1991), 467 N.W.2d 366
(employee was guilty of "favoritism" and a "brown nose" in the context of an employee grievance session); Moyer v. AmadorValley Joint Union High School Dist. (1990), 225 Cal.App.3d 720,275 Cal.Rptr. 494 (a teacher was the "worst teacher," a "babbler," and "terrorized" by student action); Gregory v.McDonnell Douglas Corp. (1976), 17 Cal.3d 596,131 Cal.Rptr. 641, 643 (union officials are "willing to sacrifice the interests of the members of their union to further their own political aspirations and personal ambitions"); Scottv. McDonnell Douglas Corp. (1974), 37 Cal.App.3d 277,284, 112 Cal.Rptr. 609, 613 (a city manager would "stoop to any form of action" in his power to stay in office' and has assumed the "position of dictator" and that the city's affairs had descended to "a mutinous character"). See, generally, Sack,supra, Section 4.3.5; Annotation, Defamation: Publication of Letter to Editor in Newspaper As Actionable (1997), 54 A.L.R.5th 443, Section 19.